# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-00622-SCT

*BANK OF COMMERCE*

*v.*

*SOUTHGROUP INSURANCE AND FINANCIAL SERVICES, LLC, AND NORMAN F. WHITE, d/b/a BARRY & BREWER*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2010 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | H. D. BROCK |
| | CHARLES J. SWAYZE, JR. |
| ATTORNEYS FOR APPELLEES: | DAVID A. BARFIELD |
| | STEVEN LLOYD LACEY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 09/15/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    The Bank of Commerce ("the Bank") brought an action against SouthGroup Insurance and Financial Services, LLC ("SouthGroup") and Norman F. White, an agent of SouthGroup, for negligent misrepresentations made by White regarding the type of liability insurance coverage they would need to purchase. The trial court granted summary judgment for SouthGroup and White on two grounds: (1) that the Bank's claims are barred by the statute of limitations; and (2) that the damages sought by the Bank constituted a voluntary payment

which may not be recovered under Mississippi's voluntary payment doctrine. The Bank appealed the trial court's decision.

## STATEMENT OF THE FACTS

¶2. The parties stipulated to the following facts:

¶3. The policy was purchased on June 20, 2004. Prior to the purchase, the Bank, with then-president Don Case, met with White and Ken Hill, a representative of Fidelity and Deposit Insurance Company, to discuss the Bank's liability insurance coverage. During the discussion, White advised Case of the availability of entity coverage, however, he did not recommend that the Bank purchase such coverage, based on his belief that the Bank's officers and directors insurance coverage would be sufficient to protect the Bank.

¶4. After the meeting, and with the Bank's approval, White solicited bids from various insurance companies. The Bank chose to purchase insurance coverage from the Chubb Group of Insurance Companies ("Chubb"), whose policy was insured through Federal Insurance Company ("the Chubb policy"). The policy was effective from June 20, 2004, through June 20, 2007.

¶5. In October of 2004, the Bank was served with six complaints filed in the Leflore County Circuit Court. The complaints alleged that the Bank had made loans financing various residential properties for resale under an illegal scheme.

¶6. In a letter dated January 18, 2005, Chubb advised the Bank that it had no entity insurance coverage under the Bank's current policy. Chubb further stated that it had no obligation either to defend the state-filed lawsuits or to indemnify the Bank for any loss

2

thereunder. The state lawsuits were dismissed voluntarily without prejudice on April 13, 2006.

¶7.     On July 18, 2005, twenty-three complaints were filed against the Bank, a second bank, and various other parties, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The complaints filed in U.S. federal court subsequently were amended to name Terry Green, an officer of the Bank, as a defendant.

¶8.     Chubb initially declined to provide a defense for the Bank.  However, Chubb subsequently undertook the defense of Green, an insured under the directors and officers coverage of the Chubb policy, and undertook the defense of the Bank in all of the twenty-three federal proceedings, once Green was named as a defendant.

¶9.     White, on behalf of SouthGroup, forwarded a letter dated January 12, 2006, to Case, in which he acknowledged that he had neither recommended nor advised the Bank to include entity coverage in the Bank's insurance policy.  White based this position on his reasoning that an entity cannot commit an action and that actions must be committed by individuals, thus, naming such an individual would trigger coverage under the policy.

¶10.    The Bank, by letter from its attorney dated April 12, 2006, made a demand to SouthGroup for indemnification of expenses and any damages awarded in the federal lawsuits that were a result of the Bank not having entity coverage under the Chubb policy. On December 27, 2006, White obtained a loan from Bank in the amount of $56,036.76 secured by White's personal continuing guaranty.  White paid the loan proceeds to the Bank, representing reimbursement of Bank's expenses, including legal fees incurred by the Bank prior to Chubb assuming the defense of Bank and Green.  No release or other settlement

3

document was executed between White and the Bank, and no payment has been made since February 11, 2008, leaving a current balance of $39,895.25.

¶11.    By letter dated February 8, 2008, SouthGroup and White were provided a status report of the proceedings in federal court by the Bank's attorney.  In the letter, the attorney recommended that SouthGroup and White place their errors and omissions insurance carrier on notice of possible exposure in the pending federal litigation.

¶12.    In a mediation meeting with all of the interested parties, held on March 20, 2008, before the United States magistrate in the pending federal lawsuits, a representative from Chubb announced that a settlement had been reached with the plaintiffs' attorney of the claims against Green.  Chubb then informed the magistrate and other parties that it was withdrawing from the cases and would no longer provide legal-expense coverage for the Bank. The plaintiffs released Green, the Bank's officer, agent, and employee, from liability.

¶13.    On March 31, 2008, the mediation proceedings were resumed, during which the Bank agreed to settle all of the twenty-three pending federal lawsuits for a payment of $600,000. At the time of the settlement of the federal lawsuits, the Bank and Chubb also entered into a settlement agreement releasing each other from further liability under the asserted federal RICO claims. In consideration of the mutual releases, Chubb increased its March 20, 2008, settlement offer by $100,000.

¶14.    Prior to settling the pending lawsuits, the Bank was advised by its lead attorney, F. Ewin Henson, III, that the estimated cost of the trial of the first federal case then set for trial would exceed $1 million.  The Bank has, at all times, denied any and all liability for any and all of the allegations of the various complaints filed against it.

4

¶15.    The Bank filed this complaint on July 17, 2008, seeking damages of $575,000. The Bank alleged that it had engaged White and SouthGroup to procure liability insurance coverage broad enough to fully protect the Bank and its officers and directors; that, in the course of renewal of the Bank's liability insurance coverage, White and SouthGroup negligently had misrepresented to the Bank that "entity coverage" was not necessary; that the Bank had relied upon this negligent misrepresentation; and that the Bank thereafter had suffered damages as a direct result of the defendants' erroneous representations and negligent misrepresentations.  The trial-court judge granted the defendants' Motion for Summary Judgment on May 13, 2010.  The Bank has appealed the trial court's decision.

## STATEMENT OF THE ISSUES

**I.      Whether the Bank's Claims Are Barred by the Statute of Limitations.**

**II.     Whether the Damages Sought by the Bank Were a Voluntary Payment and May Be Recovered under Mississippi's Voluntary Payment Doctrine.**

## ANALYSIS

*Standard of Review*

¶16.    This Court applies a de novo standard of review to an appeal from a grant of summary judgment by the trial court.  ***Brown ex. rel. Ford v. J.J. Ferguson Sand & Gravel Co.***, 858 So. 2d 129, 130 (Miss. 2003) (citing ***O'Neal Steel, Inc. v. Millette***, 797 So. 2d 869, 872 (Miss. 2001)).  Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is allowed only in cases where there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  In

5

conducting a de novo review, the evidence must be viewed in a light most favorable to the nonmoving party, "but, if the evidence shows that the moving party is entitled to a judgment as a matter of law, then 'summary judgment should forthwith be entered in his favor.'" *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 360 (Miss. 2004) (citing *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993)).

> I.    **Whether the Bank's Claims Are Barred by the Statute of Limitations.**

¶17.    Under Section 15-1-49(1) and (2) of the Mississippi Code:

> (1) all actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
> (2) in actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code. Ann. § 15-1-49(1)- (2) (Rev. 2003). In *Oaks v. Sellers*, this Court applied this section to insurance cases, stating that "the three-year statute of limitations, pursuant to Miss. Code. Ann. § 15-1-49, began to run at the latest" when the insured received written notice from the insurer that his claim was denied. *Oaks v. Sellers*, 953 So. 2d 1077, 1084 (Miss. 2007).

¶18.    In *Oaks*, Donald Sellers purchased complete insurance coverage from Eddie and Brenda Oaks in July 1993 for his business. *Oaks*, 953 So. 2d at 1078-79. The Oakses, agents for DeSoto Insurance, sold Sellers a business liability policy with coverage of $1 million and an umbrella insurance policy with up to $1 million in coverage. *Oaks*, 953 So. 2d at 1079. Neither policy included coverage for personal liability. *Id.* On September 28,

6

1996, Sellers's son was involved in a car accident in Tennessee that seriously injured one passenger in the car and killed the passenger's minor child. *Id.* At the time of the accident, Sellers's son was using Sellers's car and was not acting within the course or scope of Sellers's business. *Id.* American States Insurance Company, the company that issued and underwrote Sellers's insurance policy, sent Sellers written notice on August 26, 1997, denying his claim on the basis that his umbrella insurance policy would not cover his son, as the son was not acting in the course and scope of the business at the time of the accident. *Id.* Sellers filed an action against the insurance company and the agents who had sold him the policy for failure to procure the requested insurance and failure to adequately explain the coverage. *Id.* The issue before the Court at that time was when the statute of limitations had begun to run. *Oaks*, 953 So. 2d at 1080. The defendants argued that the statute of limitations began to run on August 26, 1997, when Sellers had received written notice of the denial of his claim. *Id.* Sellers, on the other hand, argued that the statute of limitations did not begin to run until the date of his actual injury, which he cites as February 16, 2001, the date when the Tennessee Court of Appeals imputed liability to him. *Oaks*, 953 So. 2d at 1081. This Court found that the trial court had erred in granting Sellers's motion for summary judgment, finding that the statute of limitations began to run when his claim was denied. Therefore, because he filed his claim nearly five years after the statute of limitations had begun to run in August of 1997, his claims against the insurance company and the agents were time-barred. *Oaks*, 953 So. 2d at 1084.

¶19. This Court further examined the statute-of-limitations issue in *Weathers v. Metropolitan Life Insurance Company*. In *Weathers*, Daniel Ray Weathers purchased a

7

life-insurance policy based on the claims of the agent of Metropolitan Life Insurance Company ("MetLife") that he would have "vanishing" premiums and would not have to pay the premiums after ten years. *Weathers*, 14 So. 3d 688, 689 (Miss. 2009). The agent verbally represented to Weathers that "the policy would become self-sustaining through dividends." *Id.* The policy was delivered to Weathers on February 1, 1994. *Weathers*, 14 So. 3d at 689-90. The language of the policy indicated that dividends could be used toward the payment of premiums. *Weathers*, 14 So. 3d at 690. Weathers first became aware that the policy did not contain "vanishing" premiums when he received notice in the mail about a class-action lawsuit against MetLife. *Id.* Weathers opted out of the class-action suit and filed a separate action against MetLife. *Id.* MetLife argued that the statute of limitations began to run when Weathers received his policy. *Id.* Weathers argued that the statute of limitations was tolled under Section 15-1-67 of the Mississippi Code. *Id.* *See* Miss. Code Ann. § 15-1-67 (Rev. 2003).

¶20. In *Weathers*, this Court stated that "if an insured is put on notice by the plain language of the policy that the agent's verbal representations are false, a fraud claim accrues on the date of the sale." *Weathers*, 14 So. 3d at 693 (citing *Stephens v. Equitable Life Assurance Soc'y of the United States*, 850 So. 2d 78, 84-85 (Miss. 2003)). However, "if the plain language of the policy does not clearly contradict the agent's representations such that the insured is put on notice, a fraud claim accrues when the insured becomes aware of the misrepresentation." *Weathers*, 14 So. 3d at 694 (citing *Stephens*, 850 So. 2d at 84-85).

¶21. In this case, the Bank argues that the statute of limitations did not begin to run until it suffered an actual loss, and that this loss did not occur until March 20, 2008, after the

8

federal RICO claims were settled. The Bank claims that White's payment of the Bank's expenses from the state claims and Chubb's payment of the defense costs in the federal RICO claims tolled the running of the statute of limitations until they ceased such action, and the Bank had an actual cause of action.

¶22. This argument is misguided. In *Oaks*, this Court clearly stated that when Sellers received written notice of the denial of his claim, he was placed "on notice of a possible problem with the procurement and understanding of the terms of his insurance policy" and that the statute of limitations began to run on the date he received the notice. *Oaks*, 953 So. 2d at 1084. Further, in *Weathers*, this Court stated that, if the insured is not put on notice by the language of the policy, "a fraud claim accrues when the insured becomes aware of the misrepresentation." *Weathers*, 14 So. 3d at 693. This Court has made it clear, in both *Oaks* and *Weathers*, that when an insured becomes aware or is put on notice by his insurance company that there is a possible problem with the insurance policy, the statute of limitations begins to run.

¶23. In this case, the statute of limitations began to run on January 18, 2005, when the Bank was notified by Chubb that it did not have entity coverage and that Chubb was under no duty to defend or indemnify the Bank in the pending six state-law complaints. Before the Bank received the letter, it was not clear to the Bank that it would not be covered under the policy. White told the Bank that it did not have entity insurance, but that he felt the Bank would not need entity insurance, based on White's belief that the officers and directors insurance coverage would be sufficient to cover the Bank. However, the Bank became aware of the misrepresentation of the coverage when it received the letter on January 18, 2005, and

9

the statute of limitations began to run that day. The Bank did not file this cause of action until July 18, 2008, six months after the statute of limitations had run. Therefore, the Bank's claims are barred by the statute of limitations.

> **II.** **Whether the Damages Sought by the Bank Constituted a Voluntary Payment and May Be Recovered under Mississippi's Voluntary Payment Doctrine.**

¶24. The first issue is dispositive. Therefore, we need not discuss this issue.

## CONCLUSION

¶25. The three-year statute of limitations began to run when the Bank first received notice that it did not have entity coverage on January 18, 2005. When the Bank filed its claim against the defendants on July 17, 2008, the statute of limitations already had run, therefore barring the Bank's claims against the defendants. The summary judgment granted by the Circuit Court of Leflore County is affirmed.

¶26. **AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, CHANDLER AND KING, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY LAMAR, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶27. The majority holds that the statute of limitations began to run when Chubb refused to cover the Bank for the claims brought in state court. However, nothing in the record suggests that the Bank was aware at that time that it would later be sued in federal court on unrelated claims or that the Bank would settle those claims for $600,000. Therefore, I respectfully disagree that the statute of limitations had expired when the Bank filed the present lawsuit. Moreover, because genuine issues of material fact remain as to whether the voluntary

10

payment doctrine is applicable to this case, I would reverse the circuit court's grant of summary judgment.

¶28. Mississippi Code Section 15-1-49 (Rev. 2003), the controlling statute, provides that the limitations period does not begin to run until "the cause of such action accrued." As interpreted by this Court:

> [A] cause of action *accrues* "when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." ***Bullard v. Guardian Life Ins. Co. of Am.****,* 941 So. 2d 812, 815 (Miss. 2006) (quoting ***Forman v. Miss. Publishers Corp.***, 195 Miss. 90, 14 So. 2d 344, 346 (1943)). In other words, the statute of limitations "begins to run when all the elements of a tort, or cause of action, are present." ***Caves v. Yarbrough***, 991 So. 2d 142, 147 (Miss. 2008). Under Section 15-1-49, "the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute." ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 167 (Miss. 1999).

***Weathers v. Metropolitan Life Ins. Co.***, 14 So. 3d 688, 692 (Miss. 2009) (emphasis in original). A cause of action cannot accrue until all the traditional elements of a tort are present, that is, duty, breach, causation, and injury. ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1354 (Miss. 1990). On January 18, 2005, when Chubb informed the Bank that its insurance policy would not cover a suit against the Bank, the Bank was put on notice that its insurance agent may have breached a duty. However, the federal claims, under which the Bank eventually would suffer the financial injury in question, were not filed for another six months. Because no injury yet existed, the present cause of action could not have accrued on January 18, 2005.

¶29. The majority relies on two cases that are easily distinguishable from this one. In ***Oaks v. Sellers***, 953 So. 2d 1077, 1078 (Miss. 2007), the plaintiff sued his insurance agents,

11

claiming that they negligently represented that the plaintiff had purchased an umbrella policy for both personal and business liabilities. *Id.* at 1078. However, the agents had procured only an umbrella policy for business liabilities; and, had the plaintiff read his policy, he would have known that he had business insurance only, and no personal coverage. *Id.* at 1082. In the present case, the Bank's claim is entirely different; the Bank was fully aware that it did not have entity coverage; thus the Bank's knowledge of the policy's contents are not at issue. *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1163 (Miss. 2010) (distinguishing between claims based on misrepresentations that would have been clarified by reading the policy and claims based on misrepresentations that a particular type of coverage was not needed).

¶30. Moreover, in *Oaks*, the denial of the insured's claim that had triggered the statute of limitations caused the injury for which the insured sued. As this Court noted, "Sellers suffered damage when American States denied coverage," because "American States's denial of coverage deprived Sellers of legal representation paid by American States." *Id.* at 1083. In the present case, Chubb's January 18, 2005, denial of coverage for the state claims did not deprive the Bank of legal representation in federal court. Indeed, Chubb did provide the Bank legal representation in federal court.

¶31. The majority also relies on *Weathers*, 14 So. 3d 688, which again, was based on an entirely different type of claim. In *Weathers*, the plaintiff sued his life insurance company based on an agent's alleged misrepresentation that the plaintiff would have to pay premiums for only ten years, after which the premiums would "vanish." *Id.* at 689. The trial court granted summary judgment in favor of the insurance company based on the statute of

12

limitations, but this Court reversed, finding that "a genuine issue of material fact exists as to whether [the agent's] representations conflicted with the plain language of the policy, so as to place Weathers on notice of any alleged misrepresentation or fraud at the time the policy was issued." *Id.* at 694. Because of the nature of the claim, the plaintiff's injury, i.e., the premiums paid after the vanishing date, would be ascertainable as soon as the misrepresentation was discovered. In the present case, while the Bank may have been aware of its agent's misrepresentation when it was sued in state court, the injury on which the present case is based, i.e., the settlement paid in federal court, had yet to materialize. Therefore, I respectfully disagree that the statute of limitations began to run before the Bank had suffered an injury.

¶32. Finally, in the alternative, the trial judge found that the "volunteer doctrine" precluded any claims by the Bank because "[t]here is no indication that the settlement and payment were made by compulsion, fraud, or mistake of fact." However, the parties stipulated that the Bank had been advised by its lead attorney "that the estimated cost of trial of the first federal case then set for trial would exceed $1,000,000." Given that the estimated cost to defend one case was almost double the amount for which the Bank settled all twenty-three cases, there is a genuine issue of material fact as to whether the settlement was reasonable and made under compulsion. *See Keys v. Rehab. Ctrs., Inc.*, 574 So. 2d 579, 585 (Miss. 1990) (jury must determine whether settlement payment for wrongful death claim was under compulsion and reasonable in amount). Because neither the "voluntary payment doctrine" nor the statute of limitations warranted summary judgment, I would reverse the judgment and remand the case for further proceedings.

**LAMAR, J., JOINS THIS OPINION IN PART.**