*1107 PIERCE, Justice,
for the Court:
¶ 1. The Bank of Commerce (“the Bank”) brought an action against Sou-thGroup Insurance and Financial Services, LLC (“SouthGroup”) and Norman F. White, an agent of SouthGroup, for negligent misrepresentations made by White regarding the type of liability insurance coverage they would need to purchase. The trial court granted summary judgment for SouthGroup and White on two grounds: (1) that the Bank’s claims are barred by the statute of limitations; and (2) that the damages sought by the Bank constituted a voluntary payment which may not be recovered under Mississippi’s voluntary payment doctrine. The Bank appealed the trial court’s decision.
STATEMENT OF THE FACTS
¶ 2. The parties stipulated to the following facts:
¶ 3. The policy was purchased on June 20, 2004. Prior to the purchase, the Bank, with then-president Don Case, met with White and Ken Hill, a representative of Fidelity and Deposit Insurance Company, to discuss the Bank’s liability insurance coverage. During the discussion, White advised Case of the availability of entity coverage, however, he did not recommend that the Bank purchase such coverage, based on his belief that the Bank’s officers and directors insurance coverage would be sufficient to protect the Bank.
¶4. After the meeting, and with the Bank’s approval, White solicited bids from various insurance companies. The Bank chose to purchase insurance coverage from the Chubb Group of Insurance Companies (“Chubb”), whose policy was insured through Federal Insurance Company (“the Chubb policy”). The policy was effective from June 20, 2004, through June 20, 2007.
¶ 5. In October of 2004, the Bank was served with six complaints filed in the Leflore County Circuit Court. The complaints alleged that the Bank had made loans financing various residential properties for resale under an illegal scheme.
¶ 6. In a letter dated January 18, 2005, Chubb advised the Bank that it had no entity insurance coverage under the Bank’s current policy. Chubb further stated that it had no obligation either to defend the state-filed lawsuits or to indemnify the Bank for any loss thereunder. The state lawsuits were dismissed voluntarily without prejudice on April 13, 2006.
¶ 7. On July 18, 2005, twenty-three complaints were filed against the Bank, a second bank, and various other parties, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (“RICO”). The complaints filed in U.S. federal court subsequently were amended to name Terry Green, an officer of the Bank, as a defendant.
¶ 8. Chubb initially declined to provide a defense for the Bank. However, Chubb subsequently undertook the defense of Green, an insured under the directors and officers coverage of the Chubb policy, and undertook the defense of the Bank in all of the twenty-three federal proceedings, once Green was named as a defendant.
¶ 9. White, on behalf of SouthGroup, forwarded a letter dated January 12, 2006, to Case, in which he acknowledged that he had neither recommended nor advised the Bank to include entity coverage in the Bank’s insurance policy. White based this position on his reasoning that an entity cannot commit an action and that actions must be committed by individuals, thus, naming such an individual would trigger coverage under the policy.
¶ 10. The Bank, by letter from its attorney dated April 12, 2006, made a demand to SouthGroup for indemnification of expenses and any damages awarded in the federal lawsuits that were a result of the *1108 Bank not having entity coverage under the Chubb policy. On December 27, 2006, White obtained a loan from Bank in the amount of $56,036.76 secured by White’s personal continuing guaranty. White paid the loan proceeds to the Bank, representing reimbursement of Bank’s expenses, including legal fees incurred by the Bank prior to Chubb assuming the defense of Bank and Green. No release or other settlement document was executed between White and the Bank, and no payment has been made since February 11, 2008, leaving a current balance of $39,895.25.
¶ 11. By letter dated February 8, 2008, SouthGroup and White were provided a status report of the proceedings in federal court by the Bank’s attorney. In the letter, the attorney recommended that Sou-thGroup and White place their errors and omissions insurance carrier on notice of possible exposure in the pending federal litigation.
¶ 12. In a mediation meeting with all of the interested parties, held on March 20, 2008, before the United States magistrate in the pending federal lawsuits, a representative from Chubb announced that a settlement had been reached with the plaintiffs’ attorney of the claims against Green. Chubb then informed the magistrate and other parties that it was withdrawing from the cases and would no longer provide legal-expense coverage for the Bank. The plaintiffs released Green, the Bank’s officer, agent, and employee, from liability.
¶ 13. On March 31, 2008, the mediation proceedings were resumed, during which the Bank agreed to settle all of the twenty-three pending federal lawsuits for a payment of $600,000. At the time of the settlement of the federal lawsuits, the Bank and Chubb also entered into a settlement agreement releasing each other from further liability under the asserted federal RICO claims. In consideration of the mutual releases, Chubb increased its March 20, 2008, settlement offer by $100,000.
¶ 14. Prior to settling the pending lawsuits, the Bank was advised by its lead attorney, F. Ewin Henson, III, that the estimated cost of the trial of the first federal case then set for trial would exceed $1 million. The Bank has, at all times, denied any and all liability for any and all of the allegations of the various complaints filed against it.
¶ 15. The Bank filed this complaint on July 17, 2008, seeking damages of $575,000. The Bank alleged that it had engaged White and SouthGroup to procure liability insurance coverage broad enough to fully protect the Bank and its officers and directors; that, in the course of renewal of the Bank’s liability insurance coverage, White and SouthGroup negligently had misrepresented to the Bank that “entity coverage” was not necessary; that the Bank had relied upon this negligent misrepresentation; and that the Bank thereafter had suffered damages as a direct result of the defendants’ erroneous representations and negligent misrepresentations. The trial-court judge granted the defendants’ Motion for Summary Judgment on May 13, 2010. The Bank has appealed the trial court’s decision.
STATEMENT OF THE ISSUES
I. Whether the Bank’s Claims Are Barred by the Statute of Limitations.
II. Whether the Damages Sought by the Bank Were a Voluntary Payment and May Be Recovered under Mississippi’s Voluntary Payment Doctrine.
ANALYSIS

Standard of Review

¶ 16. This Court applies a de novo standard of review to an appeal from *1109 a grant of summary judgment by the trial court. Brown ex. rel. Ford v. J.J. Ferguson Sand & Gravel Co., 858 So.2d 129, 130 (Miss.2003) (citing O’Neal Steel, Inc. v. Millette, 797 So.2d 869, 872 (Miss.2001)). Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is allowed only in cases where there is “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). In conducting a de novo review, the evidence must be viewed in a light most favorable to the nonmoving party, “but, if the evidence shows that the moving party is entitled to a judgment as a matter of law, then ‘summary judgment should forthwith be entered in his favor.’ ” Cockrell v. Pearl River Valley Water Supply Dist., 865 So.2d 357, 360 (Miss.2004) (citing Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993)).
I. Whether the Bank’s Claims Are Barred by the Statute of Limitations.
¶ 17. Under Section 15-1-49(1) and (2) of the Mississippi Code:
(1) all actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) in actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
Miss.Code. Ann. § 15 — 1—49(1)(2) (Rev. 2003). In Oaks v. Sellers, this Court applied this section to insurance cases, stating that “the three-year statute of limitations, pursuant to Miss.Code. Ann. § 15-1-49, began to run at the latest” when the insured received written notice from the insurer that his claim was denied. Oaks v. Sellers, 953 So.2d 1077, 1084 (Miss.2007).
¶ 18. In Oaks, Donald Sellers purchased complete insurance coverage from Eddie and Brenda Oaks in July 1993 for his business. Oaks, 953 So.2d at 1078-79. The Oakses, agents for DeSoto Insurance, sold Sellers a business liability policy with coverage of $1 million and an umbrella insurance policy with up to $1 million in coverage. Oaks, 953 So.2d at 1079. Neither policy included coverage for personal liability. Id. On September 28, 1996, Sellers’s son was involved in a ear accident in Tennessee that seriously injured one passenger in the car and killed the passenger’s minor child. Id. At the time of the accident, Sellers’s son was using Sellers’s car and was not acting within the course or scope of Sellers’s business. Id. American States Insurance Company, the company that issued and underwrote Sellers’s insurance policy, sent Sellers written notice on August 26, 1997, denying his claim on the basis that his umbrella insurance policy would not cover his son, as the son was not acting in the course and scope of the business at the time of the accident. Id. Sellers filed an action against the insurance company and the agents who had sold him the policy for failure to procure the requested insurance and failure to adequately explain the coverage. Id. The issue before the Court at that time was when the statute of limitations had begun to run. Oaks, 953 So.2d at 1080. The defendants argued that the statute of limitations began to run on August 26, 1997, when Sellers had received written notice of the denial of his claim. Id. Sellers, on the other hand, argued that the statute of limitations did not begin to run until the date of his actual injury, which he cites as February 16, 2001, the date when the Tennessee Court of Appeals imputed liability to him. Oaks, 953 So.2d at 1081. This Court found *1110 that the trial court had erred in granting Sellers’s motion for summary judgment, finding that the statute of limitations began to run when his claim was denied. Therefore, because he filed his claim nearly five years after the statute of limitations had begun to run in August of 1997, his claims against the insurance company and the agents were time-barred. Oaks, 953 So.2d at 1084.
¶ 19. This Court further examined the statute-of-limitations issue in Weathers v. Metropolitan Life Insurance Company. In Weathers, Daniel Ray Weathers purchased a life-insurance policy based on the claims of the agent of Metropolitan Life Insurance Company (“MetLife”) that he would have “vanishing” premiums and would not have to pay the premiums after ten years. Weathers, 14 So.3d 688, 689 (Miss.2009). The agent verbally represented to Weathers that “the policy would become self-sustaining through dividends.” Id. The policy was delivered to Weathers on February 1, 1994. Weathers, 14 So.3d at 689-90. The language of the policy indicated that dividends could be used toward the payment of premiums. Weathers, 14 So.3d at 690. Weathers first became aware that the policy did not contain “vanishing” premiums when he received notice in the mail about a class-action lawsuit against MetLife. Id. Weathers opted out of the class-action suit and filed a separate action against MetLife. Id. Met-Life argued that the statute of limitations began to run when Weathers received his policy. Id. Weathers argued that the statute of limitations was tolled under Section 15-1-67 of the Mississippi Code. Id. See Miss.Code Ann. § 15-1-67 (Rev.2003).
¶ 20. In Weathers, this Court stated that “if an insured is put on notice by the plain language of the policy that the agent’s verbal representations are false, a fraud claim accrues on the date of the sale.” Weathers, 14 So.3d at 693 (citing Stephens v. Equitable Life Assurance Soc’y of the United States, 850 So.2d 78, 84-85 (Miss.2003)). However, “if the plain language of the policy does not clearly contradict the agent’s representations such that the insured is put on notice, a fraud claim accrues when the insured becomes aware of the misrepresentation.” Weathers, 14 So.3d at 694 (citing Stephens, 850 So.2d at 84-85).
¶ 21. In this case, the Bank argues that the statute of limitations did not begin to run until it suffered an actual loss, and that this loss did not occur until March 20, 2008, after the federal RICO claims were settled. The Bank claims that White’s payment of the Bank’s expenses from the state claims and Chubb’s payment of the defense costs in the federal RICO claims tolled the running of the statute of limitations until they ceased such action, and the Bank had an actual cause of action.
¶ 22. This argument is misguided. In Oaks, this Court clearly stated that when Sellers received written notice of the denial of his claim, he was placed “on notice of a possible problem with the procurement and understanding of the terms of his insurance policy” and that the statute of limitations began to run on the date he received the notice. Oaks, 953 So.2d at 1084. Further, in Weathers, this Court stated that, if the insured is not put on notice by the language of the policy, “a fraud claim accrues when the insured becomes aware of the misrepresentation.” Weathers, 14 So.3d at 693. This Court has made it clear, in both Oaks and Weathers, that when an insured becomes aware or is put on notice by his insurance company that there is a possible problem with the insurance policy, the statute of limitations begins to run.
¶ 23. In this case, the statute of limitations began to run on January 18, 2005, *1111 when the Bank was notified by Chubb that it did not have entity coverage and that Chubb was under no duty to defend or indemnify the Bank in the pending six state-law complaints. Before the Bank received the letter, it was not clear to the Bank that it would not be covered under the policy. White told the Bank that it did not have entity insurance, but that he felt the Bank would not need entity insurance, based on White’s belief that the officers and directors insurance coverage would be sufficient to cover the Bank. However, the Bank became aware of the misrepresentation of the coverage when it received the letter on January 18, 2005, and the statute of limitations began to run that day. The Bank did not file this cause of action until July 18, 2008, six months after the statute of limitations had run. Therefore, the Bank’s claims are barred by the statute of limitations.
II. Whether the Damages Sought by the Bank Constituted a Voluntary Payment and May Be Recovered under Mississippi’s Voluntary Payment Doctrine.
¶ 24. The first issue is dispositive. Therefore, we need not discuss this issue.
CONCLUSION
¶ 25. The three-year statute of limitations began to run when the Bank first received notice that it did not have entity coverage on January 18, 2005. When the Bank filed its claim against the defendants on July 17, 2008, the statute of limitations already had run, therefore barring the Bank’s claims against the defendants. The summary judgment granted by the Circuit Court of Leflore County is affirmed.
¶ 26. AFFIRMED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, CHANDLER AND KING, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY LAMAR, J.