# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-01063-SCT

*RONALD W. McMORRIS d/b/a TAYLORSVILLE*
*INSURANCE AGENCY AND AMERICAN*
*RELIABLE INSURANCE COMPANY, INC.*

*v.*

*JOE TALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2013 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | WILLIAM RUFFIN |
| | CLARK MONROE |
| | LARA A. COLEMAN |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LARA A. COLEMAN |
| | DAVID A. BARFIELD |
| | GROVER CLARK MONROE, II |
| | BENNY McCALIP "MAC" MAY |
| ATTORNEYS FOR APPELLEE: | JAMES W. NOBLES, JR. |
| | WILLIAM R. RUFFIN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 05/14/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     More than three years after learning his insurance policy had expired and his agent had

not procured a replacement policy, Joe Tally sued his insurance agent, Ronald McMorris, in

tort, claiming he "breached a standard of care recognized in the State of Mississippi to the

insured for not notifying [him] of the cancellation of [his insurance] policy."[1]  Because Tally

failed to bring his claims within the three-year statute of limitations, his claims are time-

barred.  We reverse the circuit court's denial of McMorris's motion for summary judgment

and we render judgment in his favor.

## FACTS AND PROCEDURAL HISTORY

¶2.    In January 2006, Joe Tally purchased a one-year farmers and ranchers occurrence-

based liability policy with American Reliable Insurance Company through McMorris and his

insurance agency, Taylorsville Insurance Agency.  Less than two months into the policy, on

March 23, 2006, Dixie Speciality Insurance, one of American Reliable's general agents, sent

Tally a notice that it would not renew the policy.  Tally claims that he never received this

notice.  Once his policy expired on January 29, 2007, Tally's farm lacked any liability

coverage.

¶3.    On February 8, 2008, the Fortenberrys—while riding their motorcycle down a country

highway—hit one of Joe Tally's donkeys that had escaped from his farm.  Within days of the

accident, Tally called McMorris to report the accident and make a claim against his farm-

liability policy.  Several days later, McMorris informed Tally that his farm-liability policy

had expired on January 29, 2007.  Even though Tally was aware that he had purchased a one-

---

[1] We are not asked to consider whether Mississippi recognizes a "standard of care" requiring an insurance agent to notify an insured when a policy is cancelled or to procure a replacement policy, or even whether such a claim sounds in tort or contract.  Instead, the only issue before us is whether Tally brought his claims within the general three-year statute of limitations.

year policy and that he had not paid any premium for a renewal, he claims he was unaware he was uninsured until the accident in February 2008.

¶4. In the aftermath of the accident, on March 19, 2008, Tally sent McMorris a demand letter stating that he now knew his farm-liability policy had expired, but that he expected McMorris's agency would "take care of this matter." McMorris's agency and American Reliable both refused to provide coverage for the accident or to take responsibility for the claim.

¶5. On January 5, 2009, the Fortenberrys sued Tally for injuries sustained in the accident with Tally's donkey. On November 16, 2011, the trial court granted Tally leave to file a third-party complaint against McMorris and American Reliable. And on January 3, 2012, Tally finally asserted his claims against McMorris and American Reliable.

¶6. In his third-party complaint, Tally requested: (1) a declaration that American Reliable provided coverage for the accident and that McMorris breached his standard of care by not notifying Tally that his policy would not be renewed; (2) damages caused by McMorris's failure to notify Tally that the policy was not renewed; and (3) an injunction against American Reliable and McMorris requiring them to provide a defense and coverage for the accident.

¶7. Both McMorris and American Reliable denied Tally's claims and both later requested that Tally's claims be severed. After conducting discovery, both filed motions for summary judgment. McMorris argued that Tally's claims were barred by the general three-year statute

3

of limitations.[2] American Reliable also argued that Tally's claims were time-barred and that Tally was presumed to have received notice that his policy was not renewed.

¶8. After the trial court denied both motions for summary judgment, we granted both parties permission to file interlocutory appeals. Once the appeals were lodged in this Court, we granted a joint motion to dismiss American Reliable from the case, leaving McMorris as the lone defendant.

## ANALYSIS

¶9. The sole issue before this Court is whether Tally's claims against his insurance agent McMorris are barred by Mississippi's three-year statute of limitations.[3] We review *de novo*,[4] a trial court's decision to grant or deny a motion for summary judgment based on the statute of limitations and as in all summary judgment cases, we view the facts in the light most favorable to the party opposing the motion.[5]

¶10. Both parties agree that Section 15-1-49 applies, but they disagree about when the time began to run on Tally's claims. Under Section 15-1-49, "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."[6] This Court has been clear that the statute of

---

[2] *See* Miss Code. Ann. § 15-1-49 (Rev. 2012).

[3] *Id.*

[4] ***Stringer v. Trapp***, 30 So. 3d 339, 341 (Miss. 2010) (citing ***Wayne Gen. Hosp. v. Hayes***, 868 So. 2d 997, 1000 (Miss. 2004)).

[5] ***Albert v. Scott's Truck Plaza, Inc.***, 978 So. 2d 1264, 1266 (Miss. 2008) (citing ***Green v. Allendale Planting Co.***, 954 So. 2d 1032, 1037 (Miss. 2007)).

[6] Miss. Code Ann. § 15-1-49.

limitations begins to run when an insured—or uninsured, as the case may be—learns that there is a problem with an insurance policy, or that no insurance policy is in effect.[7]

¶11.    In *Oaks v. Sellers*, we held that, once the uninsured claimed he was covered under a policy and his claim was denied, the statute of limitations began to run on any claim against his insurance agents for failure to procure necessary coverage.[8] We explained that when the claim of coverage was denied, this "placed [the uninsured] on notice of a possible problem with the procurement and understanding of the terms of his insurance policy," and at this point, the statute of limitations began to run.[9] We flatly rejected the uninsured's argument that the statute of limitations did not begin to run until he was charged with liability, which the uninsured labeled an "actual injury."[10]

¶12.    And in *Bank of Commerce v. Southgroup Insurance and Financial Services, LLC*, we again held that knowledge of an insurance agent's alleged misrepresentation was sufficient to start the statute of limitations running.[11] Once the plaintiff bank learned its insurance coverage was inadequate, the statute of limitations on claims against its insurance agent started ticking.[12]

---

[7] *Bank of Commerce v. Southgroup Ins. & Fin. Servs., LLC*, 73 So. 3d 1106, 1110 (Miss. 2011).

[8] *Oaks v. Sellers*, 953 So. 2d 1077, 1083 (Miss. 2007).

[9] *Id.* at 1084.

[10] *Id.* at 1083.

[11] *Bank of Commerce*, 73 So. 3d at 1110.

[12] *Id.* at 1111.

¶13. In this case, Tally denies that he received the March 23, 2006, letter informing him that his policy would not be renewed. But it is undisputed that on March 19, 2008, he knew that his liability policy with American Reliable had expired, and that his farm was not covered by any liability policy. As soon as he learned that he had no liability coverage, he suffered a cognizable injury. Tally immediately could have filed suit seeking a declaratory judgment that he was covered by American Reliable and, if not, that McMorris would be liable for any damages, losses, and attorney fees that would have been covered under the policy.

¶14. It is noteworthy that, when Tally later sued McMorris, two of his claims were for declaratory and injunctive relief. The dissent focuses on Tally's claim that McMorris breached a standard of care but overlooks the fact that Tally sought both declaratory and injunctive relief, which Tally could have sought long before the Fortenberrys sued him.

¶15. Under our precedent, the statute of limitations on an insured's or uninsured's claims against an insurance agent or company begin to run when the insured or uninsured learns there is a problem with the policy, or no coverage or policy at all.[13] It is undisputed that Tally did not assert his claims until January 3, 2012, more than three years after he learned his agent had failed to procure a replacement policy. So Tally's claims are, as a matter of law, time-barred and the trial court erred in not granting McMorris's motion for summary judgment.

---

[13] *Bank of Commerce*, 73 So. 3d at 1110 ("This Court has made it clear . . . that when an insured becomes aware or is put on notice by his insurance company that there is a possible problem with the insurance policy, the statute of limitations begins to run.").

¶16.    The dissent's reliance on ***Bullard v. Guardian Life Insurance Company of America***

is misplaced.[14]    In ***Bullard***, this Court considered the timeliness of an insurance agent's

cross-claim against a life-insurance company for reputational harm.[15]    When the agent filed

his cross-claim, the agent and the life-insurance company were embroiled in litigation

brought by a dissatisfied customer to whom the agent had sold a "vanishing premium" life-

insurance policy.[16]    Nearly ten years after the agent sold the policy, the insured learned that

additional premium payments would be required.[17]    The angry insureds sued both the agent

and the company.[18]

¶17.    After the agent was sued, he brought a cross-claim against the company because his

reputation in the community had been tarnished after his customers sued him for selling a

deceptive life-insurance policy.[19]    This Court found that the agent's cross-claim asserting

reputational harm against the company did not accrue until the disaffected insureds sued him

and the company.[20]    Requiring the agent to bring his suit for reputational harm within three

---

[14] ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812 (Miss. 2006).

[15] ***Id.*** at 813-14.

[16] ***Id.*** at 814.

[17] ***Id.***

[18] ***Id.***

[19] ***Id.*** at 814-15.

[20] ***Id.*** at 815.

years of selling the policy would have required the agent "to presage" that his customers might later sue him for fraud when their policy premium did not vanish.[21]

¶18.    Here, Tally did not have to "presage" claims for reputational harm. He clearly knew more than three years before filing suit that he had no coverage. And, unlike the reputational harm claim at issue in *Bullard*, Tally's claims against American Reliable and his agent were ripe for adjudication as soon as he discovered he had no liability coverage.

## CONCLUSION

¶19.    Because the statute of limitations for Tally's claims against McMorris began to run when Tally learned he had no coverage and wrote McMorris requesting assistance with the looming Fortenberry litigation, Tally's claims are barred by Mississippi Code Section 15-1-49's three-year statute of limitations. The trial court erred as a matter of law in not granting McMorris's motion for summary judgment. We reverse the trial court's denial of McMorris's motion for summary judgment and we render summary judgment in McMorris's favor.

¶20.    **REVERSED AND RENDERED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. PIERCE, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶21.    Because the laws of this State, including Section 15-1-49 of the Mississippi Code, and precedent of this Court, especially *Bullard v. Guardian Life Insurance Co. of America*, 941

---

[21] *Id.*

8

So. 2d 812 (Miss. 2006), necessitate a different, fairer result, which would allow Tally to proceed in his tort suit against Taylorsville, I respectfully dissent.

¶22.    It is undisputed that the three-year statute of limitations provided by Section 15-1-49(1) is the applicable statue of limitations in this case. *See **Jenkins v. Pensacola Health Trust, Inc.***, 933 So. 2d 923, 926 (¶ 13) (Miss. 2006) ("The three year statute of limitations applicable to negligence actions is codified in Miss. Code Ann. Section 15-1-49 (Rev. 2003)."). The sole issue before this Court is whether Tally's cause of action against Taylorsville, and only against Taylorsville, accrued on March 19, 2008, when he sent Taylorsville a letter acknowledging his lack of liability insurance coverage, or on January 5, 2009, when the Fortenberrys filed suit against Tally in Smith County Circuit Court.

¶23.    The plain language of the statute defines when the prescription period begins. Mississippi Code Section 15-1-49 states that "[a]ll actions for which no other period of limitations is prescribed shall be commenced within three (3) years next after the cause of such action *accrued*, and not after." Miss. Code Ann. § 15-1-49(1) (Rev. 2012) (emphasis added). Thus, according to the text of the statute, the statute of limitations did not begin to run at the point in time when Tally learned his insurance policy with Taylorsville had lapsed, as the majority asserts.  Instead, the clock began to tick on Tally's negligence claim against Taylorsville the moment the claim accrued. Our decision therefore should turn on when it may be said that Tally's negligence claim against Taylorsville "accrued" within the meaning of the statute.

¶24. "The basic elements necessary to state any tort claim are duty, breach of duty, causation between the breach of the duty and the injury, and *actual* damage." ***Bullard v. Guardian Life Ins. Co. of America***, 941 So. 2d 812, 815 (¶ 11) (Miss. 2006) (emphasis added). This Court has held unequivocally "that a cause of action *accrues* 'when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.'" ***Weathers v. Metropolitan Life Ins. Co.***, 14 So. 3d 688, 692 (¶ 14) (Miss. 2009) (quoting ***Bullard***, 941 So. 2d at 815 (¶ 11)). Further, "[i]n order to mature into a tort, the negligent act must proximately produce *recoverable damages*." ***Caves v. Yarbrough***, 991 So. 2d 142, 147 (¶ 21) (Miss. 2008) (emphasis added) (citing ***Methodist Hosp. of Miss. Annual Conference v. Gammel***, 252 Miss. 229, 172 So. 2d 762 (1965)).

¶25. Accordingly, under the plain language of Section 15-1-49, a negligence action "accrues" when all of the elements, i.e., duty, breach, causation, and damages, exist. That is when the cause of action "comes into existence as an enforceable claim." ***Weathers***, 14 So. 3d at 692 (¶ 14). A plaintiff cannot recover in a negligence action against his or her insurance agent without proof of all the elements of a negligence claim. ***Lovett v. Bradford***, 676 So. 2d 893, 896 (Miss. 1996); *see also* ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1354 (Miss. 1990) ("Recovery in a negligence action requires proof by a preponderance of the evidence of the conventional tort elements: duty, breach of duty, proximate causation, and injury (*i.e.*, damages).").

¶26. This principle was expounded most clearly in ***Bullard***. In that case, Bullard, an insurance agent, was sued by two of his clients in 2000 for having fraudulently induced them

10

to purchase a life insurance policy in 1990. ***Bullard***, 941 So. 2d at 814 (¶ 3). Bullard filed a cross-claim against the Guardian Life Insurance Company (Guardian) in 2002, alleging that Guardian "induced him to sell the [plaintiffs] a life insurance policy based upon false and misleading sales presentations. . . ." ***Id.*** at 813 (¶ 1). Guardian moved for summary judgment, arguing that the statute of limitations on Bullard's cross-claim began to run when he sold the insurance policy to the plaintiffs in 1990 and that his cross-claim filed in 2002 was barred by the statute of limitations. ***Id.*** at 814 (¶ 7). The trial court agreed and granted summary judgment in favor of Guardian. ***Id.***

¶27.     This Court reversed, holding that "Bullard's cause of action against Guardian did not *accrue or occur* pursuant to Miss. Code Ann. Section 15-1-49(1) until the Prathers filed suit against him in 2000." ***Id.*** at 815 (¶ 9) (emphasis added). Bullard had no cause of action against Guardian when he sold the policy in 1990 "because he had suffered no damage. In the absence of damage, *no litigable event arose*." ***Id.*** (emphasis added). The Court, noting that a cause of action accrues when it comes into existence as an enforceable claim, held that "Bullard's claim did not accrue until 2000, when . . . actual damage occurred, after the [plaintiffs] made allegations against him." ***Id.*** at 815 (¶ 11). The Court simply stated that, "without injury, no action lies." ***Id.***

¶28.     The Court noted that requiring Bullard to file suit against Guardian within three years of 1990, before he had been sued by the plaintiffs, "would require Bullard to presage that the [plaintiffs] would file suit against him and cause him damage. Such a claim for prospective or possible damages is not recognized by this state." ***Id.*** at 815 (¶ 13). The ultimate deciding

11

question for the Court was simple. "[I]f Bullard had brought suit in 1993, and no damage had yet occurred or accrued, could Bullard have successfully survived a Rule 12(b)(6) motion? *See* M.R.C.P. 12(b)(6). A reasoned analysis can result in only one conclusion: such a claim then could not survive." *Id.* at 816 (¶ 13). Because Bullard had no damages until 2000, and therefore no complete claim in tort until 2000, his statute of limitations for his tort claim against Guardian began to run in the year 2000 when the claim actually could have been made. *Id.* at 816 (¶ 15).

¶29.　In this case, Tally is alleging that Taylorsville had a duty to give him timely notice that his policy was expiring and to procure him a new policy, and that it breached that duty when it failed to do so before his policy expired. This Court has held that "[a]n insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith." *Lovett*, 676 So. 2d at 896. The alleged duty and breach on the part of Taylorsville occurred, at the latest, when Tally's policy expired and he was left without insurance. However, the critical element of damages still was missing. Taylorsville contends that the statute of limitations began to run against Tally when he realized that he was uninsured following the incident between his donkey and the Fortenberrys. But, as we held in *Bullard*, a cause of action cannot accrue under Section 15-1-49, and the three-year statute of limitations cannot begin to run under Section 15-1-49, until all the elements of such a claim, including actual damages, exist.

¶30.　We must ask ourselves, then, whether Tally suffered any damages due to the alleged negligence of his insurance agent after he was aware of his lack of insurance coverage but

before he actually was sued. He did not. Had Tally filed a negligence action against Taylorsville when he knew that his insurance had lapsed and that the Fortenberrys *might* sue, what would his damages have been? A *potential* lawsuit with the possibility of attorney fees and perhaps an adverse outcome? Under **Bullard**, that does not suffice, because it would require Tally "to presage that the [Fortenberrys] would file suit against him and cause him damage. Such a claim for prospective or possible damages is not recognized by this state." *Id.* at 815 (¶ 13). The mere threat of a lawsuit from the Fortenberrys did not constitute damages cognizable in tort.

¶31.    Perhaps a better question is, if Tally had sued Taylorsville before he had accrued any actual damages, would such a suit have survived a Rule 12(b)(6) motion to dismiss? *See* M.R.C.P. 12(b)(6). Just as the Court found in **Bullard**, we find that such an action could not have survived. It was only after the Fortenberrys had brought suit that Tally suffered actual damages in the form of attorney fees and exposure to liability. These are actionable damages; but until they existed, Tally did not have a claim that sounded in tort. Said another way, until Tally was sued and suffered damages, "no litigable event arose." **Bullard**, 941 So. 2d at 815 (¶ 9). As no complete negligence claim against Taylorsville existed until the Fortenberrys had sued Tally, it is clear that his statute of limitations began to run on the date of that occurrence. To hold otherwise would require this Court to decide that time was running on a claim that could not yet be made.[22] Our holding in **Bullard** forecloses that possibility.

---

[22]We clarify that there very well may have been other claims against other parties that could have been made earlier, such as a declaratory judgment action against the insurer, American Reliable. However, in *this* case, in the posture that it has been presented to this Court for decision, we must determine when Tally could have made *this* claim against *this*

¶32. Now, we must address some precedent relied upon by the majority regarding the statute of limitations in actions between the insured and his or her insurance agent which holds that the statute of limitations on such a claim begins to run on the date that the insured knows that there is a problem with his or her insurance policy. Under such a rule, as the majority concludes, Tally's claim against Taylorsville was untimely. However, an analysis of this alternate line of cases reveals that these decisions are distinguishable from the facts and circumstances underlying the present case.

¶33. In *Oaks v. Sellers*, 953 So. 2d 1077, 1079 (¶ 3) (Miss. 2007), Donald Sellers's son Eddie was involved in a motor vehicle accident while driving Donald's car, in which Eddie's friend was injured and the friend's son was killed. At the time of the accident, Donald had a business liability policy with the Oaks Insurance Company (Oaks) for $1 million and an umbrella insurance policy for up to $1 million; but the umbrella policy provided coverage only for business liability and not for personal liability. *Id.* (¶ 2). Donald filed a claim under the umbrella policy with the underwriter, American States Insurance Company (American States), but it was denied in August of 1997 because Donald's son Eddie was not acting in the course and scope of Donald's business when the accident occurred. *Id.* (¶ 4). Donald and Eddie then were sued in Tennessee regarding the collision. *Id.* (¶ 5). The trial court held Eddie liable for the wrongful death of his friend's son and his friend's injuries but imputed no liability to Donald. *Id.* The Tennessee Court of Appeals reversed the trial court's

---

defendant. Tally simply could not have maintained a negligence claim in tort against McMorris d/b/a Taylorsville *until* Tally had been sued.

14

determination as it related to Donald and imputed liability to him on February 16, 2001. *Id.* (¶ 6).

¶34.    Donald sued Oaks in Mississippi after the Tennessee court had imputed liability to him, arguing that the statute of limitations on such a suit did not start to run until liability had been imputed to him in Tennessee. *Id.* at 1081 (¶ 12). Donald contended that he did not suffer an actual injury until that date, and that his suit, which was filed within three years of that injury, was commenced within the three-year limitations period. *Id.* Oaks contended that Donald's right to sue vested on the date that Donald's claim was denied, more than three years before the Tennessee Court of Appeals imputed liability to Donald. *Id.* at 1080 (¶ 11).

¶35.    This Court agreed with the defendants that the right to sue vested when the insurance company denied Donald's claim. The Court did acknowledge that, generally, "'[a] cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested,' and the theory that an injury has to happen before a tort is considered complete." *Id.* at 1081 (¶ 13) (quoting *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 706-07 (Miss. 1990)). However, the Court noted that the decision in *Owens-Illinois* "made clear that the issue of when a cause of action accrues was considered in the context of latent injury or disease," and not in the context of misrepresentation of insurance policy coverage. *Id.*

¶36.    Nonetheless, the Court did find that the suffering of damages by the plaintiff in *Oaks* was sufficient to trigger a cause of action against the insurance company. The defendants prevailed because this Court found that the denial of Donald's claim was the injury that

15

caused damage to Donald, rather than the later Tennessee decision that imputed liability to him.

> American States's denial of coverage deprived Sellers of legal representation paid by American States. Sellers had to rely upon his automobile insurance company, State Farm, to provide assistance in the automobile accident lawsuit in Tennessee. Sellers *suffered damage* when American States denied coverage that Sellers believed he was entitled to have and paid for via insurance premiums. In addition, the denial of benefits by American States placed Sellers on notice that the Defendants did not procure the type of business and personal insurance that he believed he had purchased.

*Id.* at 1083 (¶ 21) (emphasis added).

¶37.   So this Court agreed that a lawsuit could not be brought until the plaintiff had suffered damage; it just disagreed with the plaintiff as to what constituted "damage" sufficient to trigger tort liability in that case. There, the denial of coverage damaged the plaintiff because it denied him the defense to which he would have been entitled if coverage had applied. Further, Sellers also had a claim against his insurer because it sold him an insurance policy that did not provide the coverage he had wanted. This could have constituted grounds for another lawsuit against his insurer.

¶38.   This Court confronted a somewhat similar issue in ***Bank of Commerce v. SouthGroup Insurance and Financial Services, LLC***, 73 So. 3d 1106 (Miss. 2011), a case which also is relied upon by the majority. There, the insured bank sued SouthGroup Insurance and its agent, Norman White, claiming that White had negligently misrepresented the type of liability insurance the bank needed to purchase. *Id.* at 1107 (¶ 1). In October 2004 the bank received notice that it was facing state charges for lending money under an "illegal scheme." *Id.* (¶ 5). The bank's insurance company, the Chubb Group of Insurance

16

Companies ("Chubb"), sent a letter on January 18, 2005, notifying the bank that Chubb had no obligation to defend the state-filed lawsuits or to indemnify the bank for any loss. *Id.* (¶ 6). On July 18, 2005, twenty-three complaints were filed against the bank in federal court for similar violations. *Id.* (¶ 7). The bank demanded that SouthGroup indemnify it for any damages or expenses related to the federal charges. *Id.* at 1107-08 (¶ 10). On July 17, 2008, the bank filed suit against SouthGroup and its agent, alleging that they had negligently misrepresented to the bank the type of coverage necessary to protect itself and its officers. *Id.* at 1108 (¶ 15).

¶39.    This Court held that the statute of limitations on the bank's claim against SouthGroup began to run on January 18, 2005, when Chubb notified the bank that it had no obligation to defend the bank or indemnify it. *Id.* at 1110-11 (¶ 23). In coming to its decision, the Court relied heavily on its earlier decision in *Oaks*, particularly the holding that the insured's claim "'began to run at the latest' when the insured received written notice from the insurer that his claim was denied." *Id.* at 1109 (¶ 17) (quoting *Oaks*, 953 So. 2d at 1084 (¶ 25)).

¶40.    Although the bank argued that the statute of limitations did not begin to run until it had suffered an actual loss when it settled the federal claims against it, the Court rejected that position. "This Court has made it clear . . . that when an insured becomes aware or is put on notice by his insurance company that there is a possible problem with the insurance policy, the statute of limitations begins to run." *Bank of Commerce*, 73 So. 3d at 1110 (¶ 22). The Court held that the bank was aware of the problem with its insurance on January 18, 2005,

17

and, as it did not file suit until July 18, 2008, its claim was barred by the statute of limitations. *Id.* at 1110-11 (¶ 23).

¶41. Although the majority's reliance upon *Oaks* and *Bank of Commerce* might seem reasonable at first glance, those cases are distinguishable from this one in several important ways.

¶42. First, in *Bank of Commerce*, the plaintiff bank was facing several complaints in the Leflore County Circuit Court that necessitated insurance coverage when it discovered that its coverage was inadequate. *See Bank of Commerce*, 73 So. 3d at 1107 (¶¶ 5-6). Accordingly, it was damaged the instant its insurance company denied coverage, because it was facing real and present legal action when its coverage was denied. Here, Tally discovered that he did not have coverage long before any legal action was brought against him that would have caused him to need coverage. Accordingly, the damages to the bank for not having insurance coverage in *Bank of Commerce* were much more urgent than those faced by Joe Tally, who merely faced the possibility of a civil suit. Additionally, the suit in *Bank of Commerce* was based upon the alleged misrepresentations of the insurance agent. Accordingly, if those misrepresentations had caused the bank to purchase an insurance policy with inadequate limits, the bank would have incurred damages the moment the policy was purchased, as it was paying premiums for an insurance policy that it actually did not want. Here, Tally is not contending that his agent committed fraud or unjustly induced him to purchase a policy with inadequate limits. Instead, he simply and directly is alleging that Taylorsville was negligent in its handling of the lapse of Tally's coverage through American

18

Reliable. Such a negligence claim could exist only if and when Tally had suffered damages on account of such negligence.

¶43. In *Oaks*, this Court recognized that recoverable damages were necessary to start the clock's running on a plaintiff's claims, and held that the denial of the plaintiff's insurance claim was an injury to the plaintiff sufficient to start the prescription period, because the denial of insurance proceeds on his insurance claim for the losses he suffered in the accident "made clear that either American States was mistaken in their denial of the claim or Sellers was mistaken in the type of coverage that the insurance policies provided to him." *Oaks*, 953 So. 2d at 1083. Thus, Sellers suffered damages cognizable in tort the moment his claim was rejected, as he was not compensated for the losses he suffered in the accident. Further, as in *Bank of Commerce*, the dispute between the insured and the insurer involved alleged misrepresentations on the part of the insurer regarding the coverage limits of the policy. As the Court stated in *Oaks*, "the denial of benefits by American States placed [the plaintiff] on notice that the Defendants did not procure the type of business and personal insurance that he believed he had purchased." *Id.* Therefore, the plaintiff's injuries were immediate when coverage was denied, as he had paid money for a policy that allegedly had higher coverage limits than the one to which he had agreed.

¶44. The facts and circumstances surrounding Tally's claim against Taylorsville are different from those found in both *Oaks* and *Bank of Commerce*. Here, Tally is not alleging that anyone breached a contract, or that his policy should have provided him coverage, or that McMorris or Taylorsville misrepresented anything to him or defrauded him. He admits that

19

he was not covered but argues that the reason he was not is because of the negligence and inaction of the Taylorsville agency. He argues that Taylorsville had a *duty* timely to inform him of the upcoming lapse in coverage and to procure new insurance for him, and he argues that McMorris and his agency *breached* that duty. The two remaining elements of negligence of Tally's claim then were proximate causation and damages.

¶45.   Unless and until the Fortenberrys sued him, Tally had no damages that would be cognizable or recoverable in a tort action. "In order to mature into a tort, the negligent act must proximately produce recoverable damages." ***Caves***, 991 So. 2d at 147 (¶ 21) (citing ***Gammel***, 172 So. 2d 762)). In ***Oaks***, the Court recognized that the plaintiff was damaged when his claim was denied because it denied him both a defense and compensation for the losses he suffered in the accident. In this case, Tally's discovery of his lack of coverage did not deny him a defense to a lawsuit because the Fortenberrys had not yet filed one.

¶46.   The reasoning of ***Bullard*** should control the outcome of this case. Under the plain language of Section 15-1-49, Tally's negligence action against Taylorsville was required to "be commenced within three (3) years next after the cause of such action *accrued*. . . ." Miss. Code Ann. § 15-1-49 (Rev. 2012) (emphasis added). And our case law clearly provides that a negligence action accrues, for the purposes of Section 15-1-49, when all of the elements of a negligence claim, including damages, exist. *See **Bullard***, 941 So. 2d at 815 (¶ 4); ***Lovett***, 676 So. 2d at 896.  Here, Tally had no damages due to Taylorsville's alleged negligence until he was sued. Therefore, the statute of limitations on Tally's claim against Taylorsville did not begin to run until the Fortenberrys had sued and Tally had a complete claim in tort,

20

meaning that he could allege that the Taylorsville agency had a *duty* that it *breached* which *proximately caused* recoverable *damages* to Tally. Until damages existed, "no litigable event arose." **Bullard**, 941 So. 2d at 815 (¶ 9).

¶47. This is not to say that there may not have been other legal actions that Tally could have undertaken before he was sued. The majority's opinion holds that the statute of limitations was running for several months on a negligence claim for which damages, and therefore proximate cause, did not exist. Such an outcome defies logic. Our precedent and the language of Section 15-1-49 are clear that the statute of limitations begins to run on a claim, at the earliest, when the claim actually can be made.

¶48. Because Tally's suit against Taylorsville was filed within three years of the date that he was sued by the Fortenberrys, his suit against Taylorsville was timely and the trial court correctly denied summary judgment to Taylorsville. Up until the lawsuit was filed, under Mississippi law, Tally possessed only a *potential* claim against Taylorsville. I therefore respectfully dissent.

**KING, J., JOINS THIS OPINION.**