ON WRIT OF CERTIORARI
 

 LAMAR, Justice,
 

 for the Court.
 

 ¶ 1. Daniel Ray Weathers petitioned this Court for writ of certiorari after the Court of Appeals affirmed the Lowndes County Circuit Court’s dismissal of his claims as time-barred. Finding error, we reverse and remand so that Weathers may proceed in the trial court on his claims.
 

 FACTS AND TRIAL COURT PROCEEDINGS
 

 ¶ 2. In April 1993, Weathers and James McKie, an insurance agent for Metropolitan Life Insurance Company (“MetLife”), discussed Weathers’s interest in purchasing a life insurance policy. McKie pitched the idea that Weathers could purchase a policy that included “vanishing” premiums.
 
 [1]
 
 McKie orally represented to Weathers that he would have to pay premiums for only ten years,
 
 [2]
 
 and after that time, the policy would become self-sustaining through dividends. At his deposition, McKie provided the following, relevant testimony:
 

 Q: Did — did [Weathers] buy this [policy] under the representation from you that the premiums shown here, if he paid these ... for ten years, that he would have to pay no more premiums ever?
 

 [objection to form]
 

 McKie: Right.
 

 Q: Were there any — was there any equivocation about that or if s or but’s about that?
 

 McKie: No.
 

 [objection to form]
 

 Q: Had MetLife ever asked you or directed you to tell them that there might be circumstances where that would not happen?
 

 McKie: No.
 

 McKie supported his oral statements with various illustrations that showed out-of-pocket premium payments stopping after ten years.
 
 [3]
 

 ¶3. On October 21, 1993, Weathers signed and submitted an application to purchase a L-98 (“Life Paid-up at Age 98”) life insurance policy from McKie. McKie delivered the policy to Weathers on
 
 *690
 
 or about February 1, 1994. The policy contained a premium schedule that specified: “PREMIUMS ARE DUE ON DATE OF POLICY AND EVERY 1 MONTH(S) AFTER THAT DATE[.]” The premium schedule also provided that Weathers was to pay $531.17 monthly for fifty-nine years. The policy further provided that “[t]he benefits of your policy depend on the payment of premiums when due. Premiums are payable, while the insured is alive, on or before their due dates as shown in the premium schedule on page 3.”
 

 ¶ 4. As for dividends, the policy provided:
 

 Every year we determine an amount to be paid to our policyholders as dividends. We will determine the share, if any, for this policy and credit it as a dividend at the end of the policy year. We do not expect that any dividend on this policy will be paid until 2 years from its date.
 

 You may choose to use dividends in any one of these ways:
 

 1.
 
 Paid-Up Additions
 
 — To buy more insurance on the insured’s life.
 

 2.
 
 Dividend Acmmulations
 
 — To be left with us to earn interest at the rate we set from time to time.
 

 3.
 
 Premium Payment
 
 — To be applied toward the payment of premiums. Any excess will be used to buy Paid-Up Additions.
 

 4.
 
 Cash
 
 — To be paid to you by check.
 

 ¶ 5. Relevant to Weathers’s claims, the policy expressly provided that no sales representative “may (a) make or change any contract of insurance; or (b) change or waive any of the terms of this policy.”
 

 ¶ 6. Weathers testified at his deposition that he did not read the policy when McKie delivered it, but he noticed the plan was entitled, “Life Paid-up at Age 98.” Weathers asked McKie if the title meant that he would have to pay out-of-pocket premiums beyond ten years. McKie reassured Weathers that he would have to pay out-of-pocket premiums for only ten years. Thereafter, McKie and Weathers did not discuss the policy until 1999, when Weathers received notice of a class-action suit involving MetLife’s sale of vanishing-premium policies. Upon receipt of the notice, Weathers called McKie. McKie informed Weathers that the policy might not perform as expected and advised Weathers to contact MetLife’s home office.
 
 [4]
 

 ¶ 7. Weathers alleges that he first discovered that he would have to pay out-of-pocket premiums beyond ten years when he received the class-action notice in 1999. Weathers opted-out of the class-action suit and filed his complaint against MetLife on December 20, 2001, alleging breach of contract, fraud/misrepresentation, fraudulent inducement, and negligent training/supervision.
 

 ¶ 8. Following discovery, MetLife filed a motion for summary judgment, arguing that Weathers’s claims were time-barred under Section 15-1-49 of the Mississippi Code. MetLife argued that Weathers’s claims accrued in 1994 when he received the policy, as it expressly provided that premiums were to be paid for fifty-nine years. Conversely, Weathers denied that his claims were time-barred and argued the statute of limitations was tolled under Section 15-1-67 of the Mississippi Code.
 

 ¶ 9. The trial court entered an order granting MetLife’s motion for summary judgment. The trial court found Weathers’s claims were time-barred under Section 15-1-49 as Weathers failed to put forth evidence of fraudulent concealment which would have tolled the statute of
 
 *691
 
 limitations under Section 15-1-67. Miss. Code Ann. §§ 15-1-49, 15-1-67 (Rev. 2003). The trial court further found that Weathers had a duty to read the insurance policy, which the court found contradicted McKie’s oral representations. Weathers timely appealed the order granting summary judgment.
 

 PROCEEDINGS BEFORE THE COURT OF APPEALS
 

 ¶ 10. The Court of Appeals found that the statute of limitations began to run in 1994 upon completion of the sale of the insurance policy.
 
 Weathers v. Metro. Life Ins. Co.,
 
 14 So.3d 732, 734, 2008 Miss.App. LEXIS 426, *5 (Miss.Ct.App. July 22, 2008). The Court of Appeals reasoned that, absent tolling under Section 15-1-67, Weathers’s claims were time-barred.
 
 Id.
 
 at 734-35, 2008 Miss.App. LEXIS 426, *6-*7. The Court of Appeals found that Weathers had failed to exercise due diligence to discover the fraud, since Weathers was “put on notice” of the misrepresentations when he inquired as to the meaning of “Life Paid-up at 98.”
 
 Id.
 
 at 735, 2008 Miss.App. LEXIS 426, *8-9. The appellate court held that “Weathers unreasonably relied upon McKie’s reassurance and failed to exercise due diligence to address his concerns. Therefore, the statute of limitations was not tolled, and Weathers’s claim was time-barred when he filed suit against MetLife in 2001.”
 
 Id.
 
 at 736, 2008 Miss.App. LEXIS 426, *9.
 

 ¶ 11. After the Court of Appeals rendered its judgment, this Court granted Weathers’s Petition for Writ of Certiorari.
 

 DISCUSSION
 

 ¶ 12. This Court applies a de novo standard of review to the statute of limitations.
 
 Ellis v. Anderson Tully Co.,
 
 727 So.2d 716, 718 (Miss.1998). Furthermore, “[t]his Court reviews grants of summary judgment under the de novo standard.” Bul
 
 lard v. Guardian Life Ins. Co. of Am.,
 
 941 So.2d 812, 814 (Miss.2006). Pursuant to Rule 56 of the Mississippi Rules of Civil Procedure, summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). The court views the evidence in the light most favorable to the nonmoving party.
 
 Univ. of Miss. Med. Ctr. v. Easterling,
 
 928 So.2d 815, 817 (Miss.2006). “The moving party bears the burden of demonstrating there is no genuine issue of material fact.”
 
 Id.
 
 This Court also has held that “[w]here there is doubt whether a fact issue exists, the non-moving party is the beneficiary of that doubt.”
 
 Allen v. Mac Tools, Inc.,
 
 671 So.2d 636, 640 (Miss.1996).
 

 ¶ 13. MetLife’s motion for summary judgment alleged that Weathers’s claims were barred by the statute of limitations, and additionally, that Weathers could not establish the requisite elements of the asserted causes of action. Finding the statute-of-limitations issue to be dispositive, the trial court granted summary judgment, addressing only the statute-of-limitations question. The Court of Appeals likewise affirmed dismissal solely on the statute-of-limitations issue. Therefore, we will consider only the issue of whether the claims are time-barred due to expiration of the statute of limitations.
 

 ¶ 14. There is no dispute that the applicable statute of limitations for all the claims asserted by Weathers is three years pursuant to Section 15-1-49 of the Mississippi Code. Miss.Code Ann. § 15-1-49 (Rev.2003);
 
 see also CitiFinancial
 
 
 *692
 

 Mortgage Co. v. Washington,
 
 967 So.2d 16, 17 (Miss.2007) (ruling three-year statute of limitations applies to claims of fraudulent misrepresentation and breach of contract);
 
 Carter v. Citigroup, Inc.,
 
 938 So.2d 809, 817 (Miss.2006) (ruling three-year statute of limitations applies to claims of negligent hiring and concealment);
 
 Sanderson Farms, Inc. (Prod. Div.) v. Ballard,
 
 917 So.2d 783, 789 (Miss.2005) (ruling three-year statute of limitations applies to claims of fraud and fraudulent inducement). This statute provides, in part, that:
 

 (1) All actions for which no other period of limitations is prescribed shall be commenced within three (3) years next after the cause of such action
 
 accrued,
 
 and not after.
 

 (2) In actions for which no other period of limitations is prescribed and which involve latent injury or disease, the cause of action does not
 
 accrue
 
 until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
 

 Miss.Code Ann. § 15-1-49(1)-(2) (Rev.2003) (emphasis added). This Court has held that a cause of action
 
 accrues “
 
 ‘when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested/ ”
 
 Bullard v. Guardian Life Ins. Co. of Am.,
 
 941 So.2d 812, 815 (Miss.2006) (quoting
 
 Forman v. Miss. Publishers Corp.,
 
 195 Miss. 90, 14 So.2d 344, 346 (1943)) (emphasis added). In other words, the statute of limitations “begins to run when all the elements of a tort, or cause of action, are present.”
 
 Caves v. Yarbrough,
 
 991 So.2d 142, 147 (Miss.2008). Under Section 15-1-49, “the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute.”
 
 Donald v. Amoco Prod. Co.,
 
 735 So.2d 161, 167 (Miss.1999). Therefore, the critical question with which we are confronted is whether, in a summary judgment context, we can identify
 
 as a matter of law,
 
 the point at which Weathers knew or should have known or should have made an inquiry, based on the information available to him.
 

 ¶ 15. Weathers argues that he would not have been on notice of any cause of action if he had read the policy when it was issued. He asserts that the cause of action accrued in 1999 when he received notice of the class-action lawsuit.
 

 ¶ 16. MetLife argues that Weathers would have discovered the alleged misrepresentation/fraud had he read the policy. MetLife contends that McKie’s representations- were in direct contradiction to the policy’s unambiguous terms: 1) premiums to be paid for fifty-nine years; 2) dividends, if any, could be used to pay premiums; and 3) the terms of the policy could not be varied by an agent. According to MetLife, Weathers’s claims accrued in 1994, the year in which the policy was issued. MetLife argues that
 
 Stephens v. Equitable Life Assurance Society of the United States,
 
 850 So.2d 78, 84 (Miss.2003), controls the outcome of this case. The Court of Appeals agreed.
 
 See Weathers v. Metro. Life Ins. Co.,
 
 14 So.3d at 734-35,
 
 2008
 
 Miss.App. LEXIS 426, *5-7 (Miss.Ct.App. July 22, 2008). The Court of Appeals cited
 
 Stephens,
 
 finding that the “statute of limitations accrues upon the completion of the sale of the insurance policy.”
 
 Id.
 
 at 734, 2008 Miss. App. LEXIS 426, *5-6. We find this statement to be erroneous and more restrictive than was intended by this Court. Indeed, this Court attempted to clarify the rule pertaining to the accrual of a fraud claim in a recent vanishing premium case,
 
 Wilbourn v. Equitable Life Assurance Society of the United States,
 
 998 So.2d 430, 437 (Miss.2008). In
 
 Wilbourn,
 
 the Court emphasized that a fraud claim
 
 *693
 
 accrues either (1) upon the completion of the sale induced by such false representations,
 
 or
 
 (2) upon the consummation of the fraud.
 
 Id.
 
 According to
 
 Wilbowm,
 
 there may be a genuine issue of material fact as to “whether the alleged representations regarding the source of premium payments [are] inconsistent with the policy.”
 
 Id.
 
 Furthermore, a genuine issue of material fact may exist as to when fraud is “consummated.”
 
 Id.
 
 at 438.
 

 ¶ 17. In
 
 Stephens,
 
 this Court addressed the “issues of misrepresentation, fraud and fraudulent concealment” as those claims related to the sale of vanishing-premium policies.
 
 Stephens,
 
 850 So.2d at 79 n. 1. The plaintiffs in
 
 Stephens
 
 alleged that the insurer had misrepresented the number of required premium payments.
 
 Id.
 
 at 79-80. This Court specifically found that the written terms of both policies in question unambiguously contradicted the agent’s misrepresentations to the plaintiffs.
 
 Id.
 
 at 83. The Court held that “[t]he policies were unambiguous and clearly stated the
 
 terms
 
 of payment[,]” thus, the fraud claims accrued when the policies were purchased.
 
 Id.
 
 at 81, 83-84 (emphasis added).
 

 ¶ 18. However, the
 
 Stephens
 
 Court also provided an alternative analysis, noting that the plaintiffs continued to pay premiums years after the alleged vanishing date.
 
 Id.
 
 at 84-85. The Court noted that the plaintiffs were on notice of the alleged fraud when they continued to pay the premiums past the vanishing date.
 
 Id.
 
 at 84. The Court concluded that the plaintiffs had six years
 
 [5]
 
 following notice of the fraud in which to file suit.
 
 Id-.
 
 Because the plaintiffs failed to file suit within the six-year statute of limitations, the Court held that the claims were time-barred.
 
 Id.
 
 at 85.
 

 ¶ 19. We read
 
 Stephens
 
 to hold that if an insured is put on notice by the plain language of the policy that the agent’s verbal representations are false, a fraud claim accrues on the date of the sale.
 
 See id.
 
 at 81. This reading of
 
 Stephens
 
 is consistent with our prior caselaw, namely, “ ‘[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.’ ”
 
 Ballard v. Commercial Bank of DeKalb,
 
 991 So.2d 1201, 1207 (Miss.2008) (quoting
 
 Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,
 
 584 So.2d 1254, 1257 (Miss.1991)). On the other hand, if the plain language of the policy does not clearly contradict the agent’s representations such that the insured is put on notice, a fraud claim accrues when the insured becomes aware of the misrepresentation.
 
 [6]
 

 See Stephens,
 
 850 So.2d at 84-85. In other words, the discovery exception of Section 15-1-49(2) applies, so that the statute of limitations begins to run when the insured discovers or should have discovered the alleged misrepresentations.
 
 Fletcher v. Lyles,
 
 999 So.2d 1271, 1277 (Miss.2009);
 
 see also Donald v. Amoco Prod. Co.,
 
 735 So.2d 161, 168 (Miss.1999) (noting that the Court has applied the discovery exception in instances where the plaintiff is “precluded from discovering harm or injury because of the secretive or inherently undis-eoverable nature of the wrongdoing in question.”).
 

 
 *694
 
 ¶ 20. We now turn our focus to the policy issued to Weathers in 1994 and the question of whether the plain language of the policy contradicts McKie’s representations to Weathers, such that Weathers should have been put on notice that the representations were false. The policy is entitled “Life Paid-up at Age 98,” and it clearly states that premiums are to be paid for fifty-nine years, and an agent cannot vary the policy’s terms. MetLife argues that this language, in addition to the policy provisions regarding dividends (see
 
 supra
 
 at ¶ 4), should have put Weathers on notice of the agent’s misrepresentations. However, Weathers does not dispute that premiums are to be paid for fifty-nine years, and he acknowledges that McKie was not at liberty to vary the terms of the written policy. Although the policy itself does not explicitly mention “vanishing premiums,” Weathers contends that McKie’s representations are not inconsistent with the policy’s terms. In fact, the policy does provide alternate means by which premiums could be paid other than directly from Weathers’s pocket. We also note from McKie’s deposition testimony that even he was unaware that the policy would not perform as represented. McKie testified that he would not have sold the policy to Weathers if he had known that the premiums would not vanish in ten years.
 

 ¶ 21. When reviewing the terms of the policy in the case
 
 sub judiee
 
 in the light most favorable to Weathers (as we must when reviewing a grant of summary judgment), we find that a genuine issue of material fact exists as to whether McKie’s representations conflicted with the plain language of the policy, so as to place Weathers on notice of any alleged misrepresentation or fraud at the time the policy was issued. The policy did not expressly ■ address the relevant question at issue in this case:
 
 how
 
 the premiums were to be paid after the vanishing date.
 
 See Wilb-ourn v. Equitable Life Assurance Soc’y of the U.S.,
 
 998 So.2d 430, 437 (Miss.2008) (noting that the representations concerned how, not whether premiums were to be made). Furthermore, a juror could conclude reasonably that the sale of the policy was structured so that Weathers would have no way of knowing he had been defrauded until after the applicable statute of limitations had run.
 
 See Szymanski v. Boston Mut. Life Ins. Co.,
 
 56 Mass.App. Ct. 367, 778 N.E.2d 16, 23 (2002) (“A jury could find that it was the very essence of the marketing strategy behind the vanishing-premiums sales pitch to create a false sense of security and complacency whereby the policy holder continued to pay premiums for several years based on unrealistic expectations of the policy’s future value.”).
 

 ¶ 22. After careful consideration of the record and viewing it in the light most favorable to Weathers, we conclude that the “triggering event cannot be pinpointed as matter of law, but poses a question of fact as to when a reasonable policy holder should have realized from the available information that the policy [would not or] was not performing as allegedly promised and that the so-called vanishing premiums were a fiction.”
 
 Id.
 
 at 20. Because the trial court did not reach the other issue raised by MetLife in its motion for summary judgment, we decline to address the alternative issue that Weathers could not establish the elements of the asserted causes of action. These issues are more appropriately addressed by the trial court on remand.
 

 CONCLUSION
 

 ¶ 23. Based on the foregoing analysis, this Court reverses the Court of Appeals’ decision affirming the circuit court’s order granting summary judgment, as well as the trial court’s grant of summary judg
 
 *695
 
 ment. We remand this case to the trial court for further proceedings consistent with this opinion.
 

 ¶ 24. REVERSED AND REMANDED.
 

 WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS, AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. CHANDLER, J., NOT PARTICIPATING.
 

 [1]
 

 .“In vanishing premium litigation, insureds [claim] that life insurers sold policies by misrepresenting that the obligation to pay premiums would eventually 'vanish.' Insureds [claim] ... that the insurers’ agents represented that a portion of premiums paid in early policy years would be invested by the insurers on the insureds' accounts. Once those invested premiums grew at specific rates of return, the invested premiums would be sufficient to pay all future premiums on the policy. Insureds [argue] that agents misrepresented the rates of return on those investments, and, of course, that had the agents not misrepresented those rates of return, insureds would not have purchased the policies.” Jeffrey Jackson,
 
 Mississippi Insurance Law and Practice
 
 § 2:1 (2008).
 

 [2]
 

 . Weathers initially alleged in his complaint that McKie had represented that Weathers would have to pay premiums for seven years; however, in subsequent pleadings and in the briefs before this Court, the parties maintain that the representation concerned ten years. Thus, this Court uses the term of ten years.
 

 [3]
 

 . Prior to purchasing the policy, Weathers was shown a computer printout that illustrated premium payments stopping after ten years as the annual dividends increased in value to pay for the premiums. Weathers was also shown a "stop-and-go” illustration that represented the age at which he would start paying premiums and the age at which he could stop paying premiums because the policy would become self-sustaining at that point.
 

 [4]
 

 . Weathers received the notice prior to the represented vanishing date.
 

 [5]
 

 . The Court applied the statute of limitations as it existed in 1972.
 

 [6]
 

 . In most vanishing-premium cases, the insured becomes aware of the misrepresentation only at the time the premiums are supposed to vanish, but do not, and the insureds are required to continue making payments.