GRIFFIS, P.J., DISSENTING:
 

 ¶ 87. The question before us is whether SSW is entitled to a summary judgment on the basis of its statute of limitations defense. We review the grant or denial of a motion for summary judgment de novo, viewing the evidence "in the light most favorable to the party against whom the
 motion has been made."
 
 Karpinsky v. Am. Nat'l Ins. Co.
 
 ,
 
 109 So.3d 84
 
 , 88 (¶ 9) (Miss. 2013). SSW, as the movant, bears the burden of persuading this court that: "(1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law."
 

 Id.
 

 at (¶ 11).
 

 ¶ 88. In my opinion, we must only decide whether there are any genuine issues of material fact in dispute and whether SSW is entitled to a judgment as a matter of law. M.R.C.P. 56(c). In
 
 Weathers v. Metro. Life Ins. Co.
 
 ,
 
 14 So.3d 688
 
 (Miss. 2009), the supreme court ruled:
 

 This Court has held that a cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. In other words, the statute of limitations begins to run when all the elements of a tort, or cause of action, are present. Under Section 15-1-49,
 

 the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute
 

 . Therefore, the critical question with which we are confronted is whether, in a summary judgment context, we can identify as a matter of law, the point at which Weathers knew or should have known or should have made an inquiry, based on the information available to him.
 

 Id.
 

 at 692
 
 (¶ 14) (emphasis added) (citation and internal quotation mark omitted). The court further held:
 

 After careful consideration of the record and viewing it in the light most favorable to Weathers, we conclude that the "triggering event cannot be pinpointed as matter of law, but poses a question of fact as to when a reasonable policy holder should have realized from the available information that the policy would not or was not performing as allegedly promised and that the so-called vanishing premiums were a fiction."
 

 Id.
 

 at 694
 
 (¶ 22). Consistent with
 
 Weathers
 
 , I have considered the record and viewed it in the light most favorable to the Bank, and I conclude that, in this case, there is an issue of fact that must be determined by a jury. Here, the "triggering event cannot be pinpointed as matter of law, but poses a question of fact as to when a reasonable [Bank] should have realized from the available information that" SSW had committed the wrongful act.
 

 Id.
 

 It is clear to me that there is a factual dispute as to when the Bank learned or should have learned of SSW's wrongful conduct.
 

 ¶ 89. The Bank and SSW entered a contractual relationship where SSW agreed to serve as the Bank's investment advisor and provide the Bank with investment advice that SSW "determine[d] to be appropriate ...." Based on this relationship, SSW advised the Bank to purchase Soloso securities in 2005 and 2007. The Bank had reason to rely on SSW's advice and recommendation to understand that it was qualified and a proper institution to purchase these securities. The Bank relied upon the investment advice of SSW to purchase the securities.
 

 ¶ 90. The question here is when did the Bank know or should the Bank have known that it was not a qualified purchaser of these securities. The trial court determined that summary judgment was appropriate based on the expiration of the statute of limitations.
 

 ¶ 91. SSW's argument that the Bank's claims are time-barred relies on offering circulars that SSW says were furnished to the Bank in 2007. SSW asserts that the circulars put the Bank on notice of the legal requirements for making the investments. However, it appears the circulars were furnished to the Bank
 

 after
 

 SSW recommended the investments and the
 Bank purchased the investments. There is certainly no evidence that the circulars were provided prior to the Bank's purchase of the investments.
 

 ¶ 92. In addition, in the December 2014 email, SSW informed the Bank of its non-qualified purchaser status and identified the options to salvage the purchased investments. Now SSW denies that the Bank was unqualified to purchase the securities at issue. Instead, SSW argues that the Bank should have known in 2007 of its non-qualified purchaser status, but it maintains that the Bank is qualified.
 

 ¶ 93. The Bank offered evidence to show there was a genuine issue of a material fact in dispute. The Bank offered evidence that it was not a qualified purchaser of the Soloso securities, it
 

 never received
 

 an offering circular for any of the Soloso securities prior to the purchases, and the first time it learned that it was not a qualified purchaser was when SSW sent an email to the Bank advising it of this fact in December 2014. Thus, the Bank argues that it filed its complaint timely.
 

 ¶ 94. The Bank takes the position that the following material facts preclude summary judgment: (a) as the Bank's registered investment advisor, SSW owed a fiduciary duty to provide a "full and fair disclosure of all material facts" regarding Soloso; (b) SSW never disclosed the legal requirements to purchase or hold those securities, much less that the Bank did not meet those requirements; and (c) the Bank did not learn that it was not legally eligible to purchase or hold those investments until December 2014, less than two years prior to the instant lawsuit.
 

 ¶ 95. I am of the opinion that there is a genuine issue of a material fact in dispute as to when the statute of limitations began to run and that SSW is not entitled to a judgment as a matter of law. Accordingly, I respectfully dissent. I would reverse and remand this case for further proceedings.
 

 FAIR, J., JOINS THIS OPINION.