## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2021-CP-00333-COA

WILLIAM T. WHITE AND WILLIAM T. WHITE
D/B/A WHITE HAUL TRANSPORT, INC.

APPELLANT

v.

PATSY B. WHITE

APPELLEE

DATE OF JUDGMENT:                07/14/2020
TRIAL JUDGE:                     HON. ROGER T. CLARK
COURT FROM WHICH APPEALED:       HARRISON COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          WILLIAM T. WHITE (PRO SE)
ATTORNEY FOR APPELLEE:           PAUL E. ROGERS
NATURE OF THE CASE:              CIVIL - CONTRACT
DISPOSITION:                     AFFIRMED IN PART; REVERSED AND
                                 REMANDED IN PART - 08/16/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND SMITH, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     This is the third time that William White and his mother, Patsy White, have been

before this Court concerning related business disputes and conveyances of real property. *See*

*White v. White*, 325 So. 3d 666 (Miss. Ct. App. 2019) ("*White I*"), *cert. dismissed*, 291 So.

3d 1111 (Miss. 2020); *White v. White*, 314 So. 3d 128 (Miss. Ct. App. 2020) ("*White II*"),

*cert. denied*, 314 So. 3d 1161 (Miss. 2021).  In this case, William's complaint asserted claims

for damages and also sought to recover and to impose a constructive trust on certain land that

he had deeded to Patsy.  The circuit court dismissed William's complaint, holding that his

claims for damages were barred by the statute of limitations and that the complaint failed to state a claim for a constructive trust. For the reasons explained below, we conclude that the circuit court properly dismissed William's claims for damages based on the statute of limitations, but the circuit court erred to the extent that it dismissed William's claims to recover and impose a constructive trust on certain real properties that he previously deeded to Patsy. Accordingly, we affirm in part and reverse and remand in part.

## FACTS[1] AND PROCEDURAL HISTORY

¶2. Prior to 2002, William worked for his parents, Larrye and Patsy White, in the family business of selling manufactured homes. In 2002, Larrye and Patsy desired to retire and sell their business and "sales center." William agreed to buy the sales center with owner financing from Larrye and Patsy. An essential term of the sale was that Larrye and Patsy agreed to provide William a $500,000 line of credit for the purchase of new inventory.

¶3. In 2005, Larrye and Patsy lost their largest line of credit, which they had used to finance their line of credit to William. In addition, one of Larrye and Patsy's creditors sued them and obtained a judgment against them for approximately $800,000. Around the same time, Larrye and Patsy asked William to pay off his debt to them by obtaining a new loan against the sales center. Larrye and Patsy promised that they would then use the funds to

---

[1] Because the circuit court dismissed William's complaint pursuant to Mississippi Rule of Civil Procedure 12(b)(6), we accept the factual allegations of William's complaint as true. *City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 974 (¶8) (Miss. 2017).

continue to provide William a line of credit for new inventory. William obtained a $330,000 loan from a bank, which he used to pay off Larrye and Patsy. However, Larry and Patsye failed to honor their agreement to continue to provide William a line of credit. As a result, William eventually was left without product to sell, he was unable to meet his business's other financial obligations, and he was forced to close his business.

¶4.    After Hurricane Katrina hit the Gulf Coast in 2005, William, Larrye and Patsy, and William's brother agreed to enter into a joint venture to provide temporary housing and other services to hurricane victims. The joint venture was operated through White Haul Transport Inc., a corporation that William owned. White Haul obtained several FEMA contracts, but its largest contract was with Coastal Bridge Company LLC. After several months of work by White Haul, Coastal Bridge breached the parties' contract and owed White Haul more than $1,000,000. In May 2006, William hired a New Orleans law firm to file suit against Coastal Bridge. The lawsuit, which was filed in federal court in Louisiana, progressed slowly. William incurred significant out-of-pocket expenses and "was forced to devote his time exclusively to the prosecution of the case." In order for William to "focus solely on the prosecution of the case and thereby maximize the [joint venturers'] recovery," Larrye and Patsy "agreed to fund the remainder of the . . . litigation" against Coastal Bridge and cover William's business loans and personal expenses.

¶5.    Although William diligently pursued the Coastal Bridge litigation, Larrye and Patsy at times failed to honor their commitment to make payments on William's business and

3

personal loans. As a result, properties that William or his business owned were subjected to foreclosure. In addition, the trial in the Coastal Bridge case had to be continued, resulting in a delay of more than a year. In March 2009, "[k]nowing that [their] actions had placed [William] in a vulnerable position, [Larrye and Patsy] drafted and demanded that [William] sign an assignment agreement" and a related agreement governing the disbursement of any recovery in the Coastal Bridge litigation. The disbursement agreement provided that any recovery would first be used to reimburse Larrye and Patsy for legal costs they had paid. The balance would be split among the joint venturers, but William agreed to repay Larrye and Patsy from his share for any expenses they had paid on his behalf.

¶6.     In addition, in December 2008 and June 2009, Larrye and Patsy insisted that William deed them five properties he owned. William had over $500,000 in equity in the properties, which included his home and approximately thirty-six acres in Pike County and Lincoln County. William alleges that the deeds were not intended to be "absolute deeds but were deeds in lieu of deeds of trust"—i.e., a form of "collateral" for expenses Larrye and Patsy had paid on his behalf. William continued to exercise possession and otherwise act as the owner of the properties. William alleges that Larrye and Patsy promised to return the properties to him once they were repaid from any recovery in the Coastal Bridge litigation.[2] Larrye died

_____

[2] William alleges that Larrye and Patsy also wanted him to deed them the properties in order to hide assets from William's creditors. William claims that he did not want to hide assets from his creditors but assented to his parents' demands because of his vulnerable financial position. One of William's creditors later sued William, Larrye, and Patsy in the Pike County Chancery Court, and the chancellor found that three of the deeds at issue were

4

in March 2010.

¶7. In May 2010, White Haul settled its lawsuit against Coastal Bridge for $597,000. After legal fees and expenses were deducted, White Haul received $536,700.59. Pursuant to the assignment agreement and disbursement agreement, White Haul paid Patsy almost all of its recovery—$528,500. However, Patsy failed to keep her commitments to William. According to William, Patsy refused to pay him his share of the recovery, as required by the disbursement agreement. In addition, Pasty refused to reconvey William's properties to him, as she had promised, even though she had been more than repaid for all expenses that she previously paid on William's behalf.

¶8. In 2014, Patsy filed suit against William in the Pike County Chancery Court. In that case, Patsy alleged that in 2008 and 2009, William orally agreed to transfer title to six properties to Patsy and Larrye in exchange for Patsy and Larrye's agreement to take over the mortgage payments on the properties. William executed deeds conveying five of the properties to Patsy and Larrye—the same five properties discussed above that are at issue in this case. Patsy alleged that by mistake or oversight William had failed to execute a deed conveying the sixth property. Patsy claimed that she did not discover William's failure to execute a deed for the sixth property until 2014, when she was in the process of selling it.

fraudulent transfers intended to frustrate the creditor's effort to collect on his judgment against William. The chancellor found that Patsy "established that she and Larrye . . . had provided significant help to [William] over a long period of time," but "there was no evidence to establish a legal obligation by [William to] Patsy and Larrye." According to William, Patsy later settled with the creditor.

5

Patsy asked the chancery court to enforce the parties' oral agreement to transfer title to the property or, in the alternative, impose a constructive trust and compel William to transfer title. In July 2017, the chancery court dismissed Patsy's complaint, holding that her breach-of-contract claim was barred by both the statute of frauds and the statute of limitations and that her complaint failed to state a claim for a constructive trust. On appeal, this Court affirmed in part and reversed and remanded in part. We held that Patsy's breach-of-contract claim was barred by the statute of frauds but that her complaint stated a claim for a constructive trust that was not barred by the statute of limitations. *See White I*, 325 So. 3d at 670-77 (¶¶13-44).

¶9.     In 2014, Patsy also filed a complaint for eviction against William in the County Court of Pike County. The complaint sought to evict William from the property on which his home was situated. In March 2016, the county court entered an order of eviction. William appealed, but the circuit court dismissed the appeal because William failed to post the cost bond required by statute. William appealed the dismissal of his appeal, but this Court affirmed the circuit court's ruling. *See White II*, 314 So. 3d at 128-29 (¶¶1-3).

¶10.     In October 2016, while Patsy's lawsuits against William were pending in Pike County, William filed suit against Patsy in the Harrison County Chancery Court. William's complaint sought compensatory and punitive damages and asserted claims for, inter alia, conversion, breach of fiduciary duty, unjust enrichment, and intentional infliction of emotional distress. William alleged that Patsy was liable for damages for refusing to give him his share of the

6

Coastal Bridge settlement and for other "intentional, extreme, and outrageous" conduct. He also sought to recover and impose a constructive trust on the real properties that he had deeded to Patsy.[3]

¶11. Patsy moved to dismiss William's complaint for insufficiency of service of process, *see* M.R.C.P. 12(b)(5), arguing that William failed to serve her with process within 120 days after filing the complaint, *see* M.R.C.P. 4(h). In February 2018, rather than respond to Patsy's motion, William elected to dismiss his complaint without prejudice. *See* M.R.C.P. 41(a)(1)(i).

¶12. Four days later, William filed a new and substantially similar complaint in the same court. Before William served Patsy with process, the chancery court sua sponte ruled that the case should be transferred to circuit court because it was "actually a breach of contract case in which damages [were] being sought." Accordingly, the chancery court transferred the case to the Harrison County Circuit Court. William filed a motion for reconsideration of the transfer, arguing that although he also sought to recover damages, his "complaint [was] primarily based on conveyances of real property." William emphasized that he was "seeking to have the court set aside the deeds that [he had] conveyed and entrusted to [Patsy]."

---

[3] Although the real properties at issue were all located in Pike County or Lincoln County, William alleged that venue was proper in the Harrison County Chancery Court because Patsy resided in Harrison County "and/or because substantial alleged acts or omissions and events causing [William's] damages occurred in Harrison County." William's allegations regarding venue seemingly track the statute governing venue in circuit court. Miss. Code Ann. § 11-11-3(1)(a)(i) (Rev. 2019).

7

However, the chancery court denied William's motion for reconsideration.

¶13.    After the case was transferred, William finally served Patsy with process.  Patsy then filed an answer and motion to dismiss.  In support of her motion, Patsy argued that William's claims were barred by the statute of limitations because they accrued no later than 2010 and were subject to the "catch-all" three-year statute of limitations, Miss. Code Ann. § 15-1-49 (Rev. 2019).  Patsy also argued that William's complaint failed to state a claim upon which relief could be granted.  During the hearing on Patsy's motion, William's attorney conceded that "some of [William's] claims [were] barred" by the three-year statute of limitations.  However, relying on this Court's decision in *White I*, he also argued that William's complaint stated claims for a constructive trust and to recover land, which were subject to a ten-year statute of limitations.  *See* Miss. Code Ann. § 15-1-7 & -39 (Rev. 2019).

¶14.    Following a hearing, the circuit court granted Patsy's motion to dismiss, holding that William's claims for damages were barred by the statute of limitations and that William's complaint failed to state a claim for a constructive trust.  The circuit judge reasoned, "It must be shown by clear and convincing proof that a constructive trust is necessary as a matter of law.  Such proof is sorely lacking here."  The judge further stated that there was nothing "to establish, other than William's general allegations, that Patsy exerted 'emotional and financial undue influence' and committed fraud in her dealings with him."  Accordingly, the circuit court dismissed William's complaint with prejudice.

¶15.    William filed a motion to reconsider and to alter or amend the judgment.  While that

motion was pending, William also filed a motion to transfer the case to the Pike County Chancery Court, where *White I* was pending on remand. The circuit court subsequently denied William's motions, and William filed a notice of appeal.

¶16. On appeal, William, now representing himself, asserts that the chancellor erred for several reasons. However, we conclude that two issues are dispositive. First, the chancellor correctly ruled that William's claims for damages are barred by the statute of limitations. Second, William's complaint stated claims for a constructive trust and to recover land, and those claims are not barred by the statute of limitations. Accordingly, we affirm in part and reverse and remand in part.

## ANALYSIS

¶17. "A dismissal based on the statute of limitations presents a question of law that this Court reviews de novo." *Stacks v. Smith*, 291 So. 3d 809, 813 (¶10) (Miss. Ct. App. 2020). Likewise, "[a] motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted raises an issue of law, which is reviewed de novo." *City of Meridian*, 231 So. 3d at 974 (¶8). Our "[r]eview is limited to the face of the [complaint], and [its] allegations must be accepted as true." *Id.* "The motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of the claim." *Id.*

### I. The statute of limitations bars William's claims for damages.

¶18. William's claims for damages are all subject to the three-year catch-all statute of

limitations, Miss. Code Ann. § 15-1-49. *See, e.g.*, *Hughes v. Shipp*, 324 So. 3d 286, 291 (¶14) (Miss. 2021) (stating that section 15-1-49 applies to claims for unjust enrichment); *GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464, 468 (¶12) (Miss. 2021) (same as to claims for intentional infliction of emotional distress); *Covington Cnty. Bank v. Magee*, 177 So. 3d 826, 828 (¶6) (Miss. 2015) (same as to conversion claims); *Rives v. Ishee*, 335 So. 3d 1098, 1101 (¶13) (Miss. Ct. App. 2022) (same as to claims for breach of contract); *Johnson Trucking Co. v. Peterbilt of Miss. Inc.*, 149 So. 3d 536, 539 (¶10) (Miss. Ct. App. 2014) (same as to claims for breach of fiduciary duty and fraud).

¶19.    Under section 15-1-49, "actions . . . shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(1). "[A] cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. In other words, the statute of limitations begins to run when all the elements of a tort, or cause of action, are present." *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (¶14) (Miss. 2009) (emphasis, quotation marks, and citations omitted).

¶20.    Here, William's claims for damages are based on Patsy's refusal to pay him money he was allegedly owed from the Coastal Bridge settlement and Patsy's refusal to return properties to him following the settlement. The Coastal Bridge case settled in *2010*. William did not file the instant lawsuit until *2018*.[4]  Therefore, William's claims for damages are

---

[4] As discussed above, William voluntarily dismissed the complaint that he filed in 2016. The Mississippi Supreme Court has held that "a voluntary dismissal without prejudice does not deprive the defendant of any defense he may be entitled to make to the new suit,

barred by the applicable three-year statute of limitations.

¶21.    William argues that this case involves a "continuing tort" because Patsy allegedly "continues to refuse" to pay him and return his properties.  However, William's claims accrued—that is, he had a "right to sue" and "all the elements" of his claims were "present," *Weathers*, 14 So. 3d at 692 (¶14)—when Patsy initially refused to pay him and reconvey properties in 2010.  "Where the tortious act has been completed . . . the period of limitations will not be extended on the ground of a continuing wrong."  *Pierce v. Cook*, 992 So. 2d 612, 619 (¶25) (Miss. 2008) (quoting *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993)).  The fact that Patsy has not changed her mind or modified her position since 2010 does not give rise to a "continuing tort."  What William is complaining about is merely the "continual ill effects" of Patsy's original refusal, which is not a "continuing tort" or a basis for tolling the statute of limitations.  *Id.* (emphasis omitted).

¶22.    William also argues that the statute of limitations was tolled based on the "discovery rule," Miss. Code Ann. § 15-1-49(2).  In his brief on appeal, William asserts that when Patsy testified at a February 2016 hearing in the Pike County eviction action, he learned some additional information about her "use of" disputed funds.  However, section 15-1-49(2)

---

nor confer any new right or advantage on the complainant (plaintiff), and hence *it will not have the effect of excepting from the period prescribed by the statute of limitations, the time during which that suit was pending*."  *Koestler v. Miss. Baptist Health Sys. Inc.*, 45 So. 3d 280, 282-83 (¶9) (Miss. 2010) (quoting *Marshall v. Kansas City S. Ry. Co.*, 7 So. 3d 210, 213 (¶15) (Miss. 2009)).  Therefore, William's 2016 complaint has no effect on the statute of limitations in this case.

11

applies only to actions that involve a "latent injury," and it tolls the statute of limitations only until "the plaintiff has discovered, or by reasonable diligence should have discovered, *the injury*." *Id.* (emphasis added). Under this statute, "[c]auses of action accrue upon discovery of the injury, *not discovery of the injury and its cause*. Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury." *Am. Optical Corp. v. Est. of Rankin*, 227 So. 3d 1062, 1068 (¶23) (Miss. 2017) (citation omitted). William was well aware of his alleged injury when Patsy refused to pay him and reconvey his properties in 2010. His claim accrued, and the statute of limitations began running at that point—not years later when he allegedly learned some additional details about Patsy's "use of" the disputed funds. Accordingly, William's argument based on the discovery rule is also without merit.

¶23. Finally, William argues that his eviction in 2016 was a new tortious act that comes within the three-year statute of limitations. However, even if we assume for purposes of this appeal that Patsy's filing of an eviction action could be a tort,[5] Patsy filed and served her

---

[5] As discussed above, Patsy prevailed in the eviction action. William appealed the order of eviction, but his appeal was dismissed for failure to pay a cost bond, and this Court affirmed the dismissal. *White II*, 314 So. 2d at 128-29 (¶¶1-4). We question whether William can sue Patsy for filing an eviction action—or re-litigate his right to possession of the specific property at issue in that case—when that case resulted in a final judgment in favor of Patsy. Patsy raised the affirmative defense of res judicata in her answer, but that issue was not litigated in the circuit court. *See Eubanks v. Wade*, 220 So. 3d 247, 250-51 (¶¶16-17, 20) (Miss. Ct. App. 2017) (holding that an affirmative defense of res judicata generally may not be decided on a motion to dismiss because it requires consideration of matters outside the complaint). Accordingly, the issue is not before this Court on appeal.

complaint for eviction in 2014—more than three years before William filed the instant lawsuit. We do not see how the county court's entry of a judgment *in favor of Patsy* would bring William's claim within the statute of limitations. This argument is also without merit. Therefore, William's claims for damages are barred by the three-year statute of limitations.

**II.     William has stated claims for a constructive trust and to recover land that are not barred by the applicable statutes of limitations.**

¶24.    Relying principally on this Court's decision in *White I*, William also argues that he pled viable claims for a constructive trust and to recover land that are not barred by the applicable statutes of limitations. Therefore, he argues that the circuit court erred by dismissing his complaint pursuant to Rule 12(b)(6). For the reasons that follow, we agree with William that the circuit court erred by dismissing these particular claims.

¶25.    "A constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." *McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶24) (Miss. 2000). "[A] constructive trust is a proper remedy in a variety of circumstances," and there are "many avenues to a constructive trust." *Joel v. Joel*, 43 So. 3d 424, 431 (¶24) (Miss. 2010). "[E]xamples of wrongful conduct that may justify imposition of a constructive trust" include:

(1)     fraud, actual or constructive

(2)     duress

(3)     abuse of confidence

13

(4)      commission of wrong

(5)      any form of unconscionable conduct, artifice, concealment, or questionable means

(6)      any way against equity and good conscience.

*Id.* "Any of the conduct, by itself, in this disjunctive list will suffice." *Id.* (footnote omitted).

¶26.   Ultimately, "[c]lear and convincing proof is necessary to establish a constructive trust." *McNeil*, 753 So. 2d at 1064 (¶25). However, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the allegations in the complaint, not the plaintiff's "proof."[6] A complaint should not be dismissed under Rule 12(b)(6) unless the plaintiff fails to *allege* facts that would support a claim; at this stage, we must assume that there is proof of the complaint's well-pled factual allegations. *City of Meridian*, 231 So. 3d at 974 (¶8).

¶27.   In the present case, William filed a lengthy and detailed complaint alleging a number of wrongs by Patsy. Among other things, William alleges that Patsy insisted that he deed properties to her as a form of collateral and then refused to convey those properties back to him after she was repaid. William also alleges that Patsy's actions were fraudulent because she "had no intention of fulfilling her promises when she made them." In addition, William alleges that Patsy took advantage of him at a time when he was "under extreme emotional

---

[6] *See Metrolis v. Mugshots Tupelo LLC*, No. 1:16-CV-109-SA-DAS, 2016 WL 6952121, at *3 (N.D. Miss. Nov. 28, 2016) ("[F]or purposes of [a] Rule 12(b)(6) motion, the [p]laintiff has no burden of proof. Rather, the issue is whether the [p]laintiff, based on her pleadings, has stated a claim upon which relief can be granted." (footnote omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . .").

14

and financial duress," and he alleges that Patsy abused a fiduciary relationship and the trust and confidence that he placed in her. The conduct William alleged is of the type that could warrant the imposition of a constructive trust, if proven by clear and convincing evidence. *Joel*, 43 So. 3d at 430-31 (¶¶22-24); *Sojourner v. Sojourner*, 247 Miss. 342, 353-55, 153 So. 2d 803, 807-08 (1963) (holding that a constructive trust may arise where a grantee promises to reconvey land but has no intention of performing the promise at the time it is made).

¶28. At the motion-to-dismiss stage, we must accept William's allegations as true, *City of Meridian*, 231 So. 3d at 974 (¶8), and those allegations state a claim upon which relief may be granted. Therefore, the circuit court erred by dismissing the complaint because the court found that "clear and convincing *proof*" was "sorely lacking." (Emphasis added). The circuit court also erred by dismissing the complaint because the court found that William's "allegations" were insufficient "to *establish*" that Patsy "committed fraud" or engaged in other wrongful conduct. (Emphasis added). At this stage, there is no burden of "proof," and William's allegations are sufficient to defeat the motion to dismiss.

¶29. Indeed, the issue in this appeal is similar to an issue raised in one of the prior appeals involving these same parties. In *White I*, Patsy alleged that William orally agreed to deed a property to her in exchange for her agreement to take over mortgage payments on the property. *White I*, 325 So. 3d at 669-70 (¶5). Patsy further alleged that she paid off the note on the property, but William broke his promise. *Id.* at 670 (¶6). The chancery court

15

dismissed the complaint for failure to state a claim, but this Court reversed, holding that Patsy's allegations were sufficient to state a claim for a constructive trust. *Id.* at 672-74 (¶¶24-32). Here, William alleges that Patsy promised to return five other properties to him once she had been repaid from the Coastal Bridge settlement. He further alleges that she later refused to reconvey the properties even though she had been repaid. As with Patsy's allegations in *White I*, William's allegations in this case state a claim for a constructive trust and are sufficient to survive a motion to dismiss. What is good for the goose is good for the gander.

¶30.  In addition, William's claim for a constructive trust was filed within the applicable statute of limitations. "The statute of limitations on a constructive-trust claim is ten years." *Joel*, 43 So. 3d at 434 (citing Miss. Code Ann. § 15-1-39); *White I*, 325 So. 3d at 675-76 (¶¶37, 40); *Manning v. Perry*, 242 So. 3d 972, 977 (¶21) (Miss. Ct. App. 2017). William's claim accrued in 2010 at the earliest, and he filed the instant lawsuit in 2018.

¶31.  William also filed suit within the statute of limitations to the extent that his complaint seeks to recover land. Mississippi Code Annotated section 15-1-7 provides in relevant part that a party may "commence an action to recover land . . . within ten years . . . after the time at which the right . . . to bring the action shall have first accrued." Mississippi Code Annotated section 15-1-9 (Rev. 2019) further provides:

> A person claiming land in equity may not bring suit to recover the same except within the period during which, by virtue of Section 15-1-7, he might have made an entry or brought an action to recover the same, if he had been entitled at law to such an estate, interest, or right in or to the same as he shall claim

16

therein in equity. However, in every case of a concealed fraud, the right of any person to bring suit in equity for the recovery of land, of which he or any person through whom he claims may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which the fraud shall, or, with reasonable diligence might, have been first known or discovered.

¶32. In his complaint, William sought, among other things, to set aside deeds and recover land that Patsy allegedly obtained by fraud and other wrongful conduct. Pursuant to sections 15-1-7 and 15-1-9, William had ten years from the time his claim accrued to bring his claims to recover land. *Lott v. Saulters*, 133 So. 3d 794, 799-800 (¶¶7-10) (Miss. 2014). Sections 15-1-7 and 15-1-9 do not apply "where the plaintiff does *not* allege a possessory interest in the land." *Id.* at 801 n.3 (citing *O'Neal Steel Inc. v. Millette*, 797 So. 2d 869 (Miss. 2001)). However, William expressly alleges that he "owns and has a right to the possession of the . . . real property" at issue in this case. Accordingly, the ten-year statute of limitations applicable to actions to recover land applies to William's request to set aside the deeds that he gave to Patsy. William's claim to recover land appears to have accrued in 2010 at the earliest, and he filed the instant lawsuit in 2018, within the statute of limitations.[7]

## CONCLUSION

---

[7] We note, however, that the ten-year statute of limitations applicable to actions to recover land does *not* save William's related claims for damages. As discussed in Part I, those claims are all barred by section 15-1-49's three-year statute of limitations. *Lott*, 133 So. 3d at 803 (¶¶16-17) (holding that the plaintiff's claims for damages were barred by section 15-1-49's three-year statute of limitations even though his related claim to set aside a deed and recover land was not time-barred); *see also Kelly v. Ocwen Loan Servicing LLC*, 329 So. 3d 439, 445-46 (¶22) (Miss. 2021) (discussing *Lott*'s distinction between claims for damages and an action to set aside a deed and recover land).

¶33. The judgment of the circuit court is affirmed to the extent that it dismissed William's claims for damages for any alleged breach of the March 2009 disbursement agreement or assignment agreement or for any alleged torts. The circuit court correctly held that such claims are barred by the catch-all three-year statute of limitations. However, the circuit court erred to the extent that it dismissed William's claim for a constructive trust and his request to set aside deeds and recover land. Such claims are subject to ten-year statutes of limitations, and William's allegations of fraud and other wrongful conduct by Patsy are sufficient to survive a motion to dismiss. Accordingly, the judgment of the circuit court is

**AFFIRMED IN PART** and **REVERSED AND REMANDED IN PART**.[8]

---

[8] Although this case primarily involves rights to land situated in Pike County and Lincoln County, we remand the case to the court from which it was appealed—the Harrison County Circuit Court. As discussed above, William filed the case in the Harrison County Chancery Court, but the chancery court sua sponte transferred the case to the circuit court. The chancery court should not have transferred the case. William's complaint sought to set aside deeds and impose a constructive trust, which are matters within the core jurisdiction of the chancery court. James W. Shelson, *Mississippi Chancery Practice* § 2:4 (2022 ed.). While the complaint also asserted claims for damages, such claims were "within the pendent jurisdiction of the chancery court." *Derr Plantation Inc. v. Swarek*, 14 So. 3d 711, 716 (¶11) (Miss. 2009). Nonetheless, once the case was transferred, the circuit court properly proceeded to hear it. Once a case has been transferred from chancery court to circuit court or vice versa, the transferee court "should and must proceed with the case," "even when the transfer [was] erroneous." *Hopson ex rel. Hopson v. Meredith*, 719 So. 2d 1176, 1177 (¶3) (Miss. 1998); *see also Warner v. Hogin*, 148 Miss. 562, 567, 114 So. 347, 348 (1927) ("The chancery court and the circuit court cannot make football of a case by kicking it back and forth from one to the other."). Because we are reversing the case on other grounds, our Constitution grants us the authority to send the case back to the chancery court. Miss. Const. art. 6, § 147. However, because neither party has briefed this issue on appeal, we decline to exercise that power in this case.

It is also unusual for a Harrison County court to adjudicate claims to real property located in Pike County and Lincoln County. However, Patsy failed to pursue a timely

18

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

objection to venue, so any issue related to venue is waived. *Hodnett v. Hodnett*, 269 So. 3d 317, 321-22 (¶¶11-16) (Miss. Ct. App. 2018) (holding that in an action filed in Sharkey County to recover land in Humphreys County, the issue of venue was not "jurisdictional," and the defendant waived the issue by failing to pursue it in the trial court), *cert. denied*, 258 So. 3d 287 (Miss. 2018). As noted above, William belatedly requested that the case be transferred to the Pike County Chancery Court (*see supra* ¶15), but he has not briefed the issue on appeal. Accordingly, we decline to address this issue as well. *See* M.R.A.P. 28(a)(7).